WILLIAM F. DAVIDSON, *et al.*

*vs.*

THE COUNTY COMMISSIONERS OF RAMSEY COUNTY, *et al.*

To provide the public with necessary and convenient ways of travel and transportation is an essentially public function, which may be performed by the state itself, or may in the discretion of the state be devolved upon a private corporation, or an individual, and in either case the function retains its public character. In the eye of the law railways are modern public highways; and while railway corporations are private corporations, they are created to serve distinct public uses—uses of great public interest—and are charged with public duties, and on these grounds, and for public purposes, enjoy privileges and powers which as franchises partake of the nature of sovereignty.

A donation of money or bonds for the purpose of securing the construction of a railroad, is a donation for a public purpose.

The power of taxation may lawfully be exercised for the purpose of raising money to pay bonds given to a railroad corporation to aid in the construction of a railroad.

Taxes may lawfully be levied to raise money for the purpose of paying the principal and interest of the bonds issued by the city of St. Paul to the Lake Superior and Mississippi Railroad Company by virtue of ch. 20, Special Laws, 1868, " as a bonus to insure the speedy resumption of work, and the building of their railroad from St. Paul in the direction of Lake Superior."

Davidson et al. v. The County Commissioners of Ramsey County et al.

The authorities of the city of St. Paul issued the bonds of the city to the Lake Superior and Mississippi Railroad Company, under the provisions of a special act of the legislature, (*Sp. Laws* 1868, *ch.* 20,) and a tax was levied upon the taxable property in the city for the purpose of paying the annual interest on such bonds, and providing a sinking fund to meet the principal at maturity. The plaintiffs, property owners, and tax-payers in said city, claiming that the said tax was levied without authority of law, brought this action in the court of common pleas, Ramsey county, to annul such tax, and restrain its collection. The case comes to this court by appeal from an order overruling a demurrer to the complaint.

James Smith, Jr., and H. F. Masterson, for Appellants, cited the following authorities: *Bald. C. C. Rep.* 223; 29 *Conn.* 538; *People vs. R. R. Co.,* 24 *N. Y.* 269; *Rex vs. Eastern Counties R. R., A. & E.* 531; *Erie & N. E. R. R. vs. Casey,* 26 *Penn.* 287; 24 *How.* 256; *Black et al. vs. United Companies of N. J.* (*not reported*); *Ammant vs. New Alexandria Co.,* 13 *S. & R.* 210; *Inhabitants of Worcester vs. Western R. R. Co.,* 4 *Met.* 566; *Booth vs. Woodbury,* 32 *Conn.* 118; *Speer vs. School Directors,* 50 *Penn.* 150; *Beekman vs. Saratoga & Schenectady R. R. Co.,* 3 *Paige,* 73; *Commonwealth vs. Wilkinson,* 16 *Pick.* 175; *Bloodgood vs. Mohawk & Hudson R. R. Co.,* 18 *Wend.* 9–77; *Lexington & Ohio R. R. vs. Appelgate et al.,* 8 *Dana,* 295; *Sanford vs. R. R. Co.,* 24 *Penn.* 378; *Concord R. R. Co. vs. Greeley,* 17 *N. H.* 48; *The People vs. Kerr,* 27 *N. Y.* 205; *Gibbons vs. Mobile & Great Northern R. R. C.,* 36 *Ala.* 410, 439; 4 *Met.* 566; *Swan vs. Williams,* 2 *Mich. R.* 417; 13 *Wis.* 43; *Stewart vs. Supervisors of Polk County,* (*Supreme Court of Iowa not reported.*)

Lorenzo Allis, for Respondents, cited the following authorities: *People vs. Mayor &c. of Brooklyn,* 4 *Com.* 424; *People vs.*

*Township of Salem, Sup. Ct. of Michigan Law. Reg., Aug.* 1870, *p.* 489, *and notes pp.* 501–7 ; *Hanson vs. Vernon,* 27 *Iowa ; Cooley's Con. Lim. pp.* 43–6 ; *Whitney vs. Sheboygan R. R. Co., Am. Law Reg. Aug.* 1870, *p.* 156, *and note p.* 172 ; *Cooley's Con. Lim.* 487–494, 500.

*By the Court.*—BERRY, J.—By virtue of chapter 20, Special Laws 1868, the authorities of the city of St. Paul executed and delivered to the Lake Superior & Mississippi Railroad Company interest bearing bonds of said city to the amount of two hundred thousand dollars, " as a bonus to insure the speedy resumption of work, and the building of their railroad from Saint Paul in the direction of Lake Superior, in this state." To pay the interest on the same, and provide a sinking fund for the ultimate payment of the principal, a tax has been levied, which this action is brought to annul and prevent the collection of, so far as it affects certain real property of the plaintiffs.

The question in the case is correctly and succinctly stated by plaintiffs' counsel as follows, viz.: " Is the payment of these bonds an object or purpose for which the power of taxation can be lawfully exercised ?" · The property proposed to be taken by such taxation being money, and there being no pretence that it is to be taken as any species of forced loan, or with any purpose of making compensation for the same, no claim is made that the issue of the bonds, or the levy or collection of taxes to pay the interest or principal thereof, is in any sense an exercise *of the eminent domain* in the appropriation of the private property of the citizen to public uses. *Sharpless vs. Philadelphia,* 21 *Penn.* 166, 187 ; *The People vs Mayor of Brooklyn,* 4 *Comst.* 419 ; *Gilman vs. Sheboygan,* 2 *Black.* 510 ; *Cooley's Const. Lim.* 526.

If then, the so-called taxation is to be sustained at all, it

Davidson et al. v. The County Commissioners of Ramsey County et al.

must be sustained *as* taxation, which it is in form, and purports to be in fact.

By Sec. 1, Art. 3, and Sec. 1, Art. 4, of the constitution of this state, a general power of legislation is recognized as one of the attributes and functions of the state government, and the exercise of this general power is committed to the senate and house of representatives as the legislature.

The federal constitution, as well as the constitution of this state, contains provisions prohibitory, directory and mandatory, which operate to some extent to control legislative action; all of which might be dismissed with the single remark, that none of them have any material bearing upon the subject of our present examination. Of one or two provisions of this nature in our state constitution which relate especially to the subject of taxation, and to which reference was made upon the argument at bar, we shall, however, take occasion to speak by and by.

A general power of legislation, because it is general, embraces the general power of passing laws applicable, not only to the state at large, but to each of its subordinate political subdivisions, and, among other things, of passing laws providing for taxation.

It follows that the legislature of this state possesses the general power of passing laws applicable to the city of St. Paul, authorizing said city to issue its bonds and to levy taxes to pay the principal and interest thereof; and this is what the legislature has attempted to do by *ch.* 20, *Special Laws* 1868, under which the bonds in this instance were issued, and the tax complained of levied. The objection made to the law is that it purports to authorize the exercise of the taxing power for purposes for which it cannot be exercised. In other words it is claimed that the so called taxation is not taxation in any

proper sense, but confiscation, or some other unauthorized mode of depriving the citizen of his property.

The taxation provided for is taxation in form. If it is not taxation in fact, it is either because it is in its nature not taxation, or because it is inhibited by our constitution expressly or by implication. If it is taxation in fact, and is not forbidden by the constitution, then, under the grant of general legislative power, it was, as we have seen, competent for the legislature to authorize the same.

The first inquiry in our investigation will then be : What are taxes ? So far as this case requires, they may be well defined to be pecuniary charges imposed by the legislative power of the state upon property, to raise money for public purposes. *Sharpless vs. Mayor of Philadelphia,* 21 *Penn State,* 169 ; *Blackwell on Tax Titles,* 7 ; *Cooley's Const. Lim.* 479.

The plaintiffs' counsel claims that the purpose for which money is raised by taxation, must be not only public, but governmental. But we think that neither reason, authority, nor common usage support his definition. He argues that "a tax must be raised for, and be used in support of the government. The public purpose which will justify the laying of a tax, must be a public purpose in the above sense. It is not the public *benefit* merely which will constitute a public purpose in this sense. Schools, colleges, * * hospitals, * * steamship and other carrying lines, when established and conducted by individuals, or private corporations, are nevertheless highly and extensively beneficial to the public; but who would have the hardihood to claim that a tax could be lawfully laid, and collected and *given* to such individuals, or corporations, in aid of their respective enterprises?"

It seems to us that the plaintiffs' counsel errs in undertaking to manufacture a definition. The meaning of a word is to be ascertained, not by any such process, but by inquiring what

Davidson et al. v. The County Commissioners of Ramsey County et al.

those who use it mean by it.    That the word tax is not usually employed in any such limited sense as that for which the counsel contends, is shown by the authorities above cited ; by the dictionaries ; by common legislative construction and practice here and elsewhere, and by the concurring determination of nearly all the courts of last resort in this country in favor of the right to impose taxes for purposes like those for which the tax complained of in this case is levied.    The descriptive definition, which is by usage so universal and authoritative given to the terms tax and taxation, certainly does not require that the power of taxation should be exercised, and taxes raised, [as the counsel claims,] exclusively, "in the support of the government."   Some of the very cases put by counsel, of donations of money raised by taxation to schools, colleges, hospitals, and steamship and other carrying lines, when established and conducted by individuals, or private corporations, are of such frequent occurrence, that, so far from supporting the counsel's view, they tend very strongly to show that the power of taxation, by common consent and general understanding, extends to public purposes in general, whether "governmental" in the counsel's view, or not.

Taxes being, then, charges imposed for public purposes, the next inquiry is, are the taxes complained of in this case imposed for such purposes ?   They were, as we have seen, authorized and levied for the declared purpose of making a donation to the Lake Superior and Mississippi Railroad Company, to insure the resumption of work upon, and the completion of said company's railroad from St. Paul in the direction of Lake Superior.   Is the purpose of constructing a railroad public in its nature ?   In *Sharpless vs. Mayor of Phila.*, 21 *Penna. State*, 169, which may be regarded as a leading case upon this subject, Chief Justice Black says :   " I have conceded that a law authorizing taxation for any other than pub-

lic purposes is void, and it cannot be denied that a railroad company is a private corporation. But the right to tax depends upon the ultimate use, purpose, and object for which the fund is raised, and not on the nature or character of the person or corporation whose intermediate agency is to be used in applying it. A tax for a private purpose is unconstitutional, though it pass through the hands of public officers; and the people may be taxed for a public work, although it be under the direction of an individual or private corporation. The question, then, is whether the building of a railroad is a public or private affair. If it be public it makes no difference that the corporation which has it in charge is private.

A railroad is a public highway for the public benefit, and the right of a corporation to exact a uniform, reasonable, stipulated toll from those who pass over it, does not make its main use a private one. The public have an interest in such a road, when it belongs to a corporation, as clearly as they would if it were free, or as if the tolls were payable to the state, because travel and transportation are cheapened by it to a degree far exceeding all the tolls and charges of every kind, and this advantage the public have over and above those of rapidity, comfort, convenience, increase of trade, opening of markets, and other means of rewarding labor or promoting wealth. * * * It is a grave error to suppose that the duty of a state stops with the establishment of those institutions which are necessary to the existence of government; such as those for the administration of justice, the preservation of the peace, and the protection of the country from foreign enemies; schools, colleges, and institutions for the promotion of the arts and sciences, which are not absolutely necessary, but highly useful, are also entitled to a public patronage enforced by law. * * * * Canals, bridges, roads, and other artificial means of passage and transportation from one

Davidson et al. v. The County Commissioners of Ramsey County et al.

part of the country to the other, have been made by the sovereign power, and at the public expense, in every civilized state of ancient and modern times.    *    *    *    *

"It being the duty of the state to make such public improvements, if she happen to be unable or unwilling to perform it herself to the full extent desired, she may accept the voluntary assistance of an individual, or a number of individuals associated together or incorporated into a company.    The company may be private, but the work they are to do is a public duty; and along with the public duty there is delegated a sufficient share of the sovereign power to perform it. The right of eminent domain is always given to such corporations.    But the right of eminent domain cannot be used for private purposes; and therefore if a railroad, canal, or turnpike, when made by a corporation, is a mere private enterprise,    *    *    *    there never was a constitutional charter given to such corporation, and every taking of land or materials under any of them, was a flagrant trespass.

"If the making of a railroad is a public duty, which the state may either do entirely at the public expense, or cause to be done entirely by a private corporation, it follows that such a work may be made partly by the state, and partly by a corporation, and the people may be taxed for a share of it, as rightfully as for the whole.    The corporation may be aided by an exertion of the taxing power, as well as with the right of eminent domain.    Accordingly we find that from the earliest times the commonwealth has subscribed to the stock of such corporations.    *    *    *

"Now, if the legislature may create a debt and lay taxes on the whole people to pay for such subscriptions, may they not, with more justice and greater propriety, and with as clear a constitutional right, allow a particular portion of the people to tax themselves to promote in a similar manner a public

work, in which they have a special interest? * * * * I cannot conceive of a reason for doubting, that what the state may do in aid of a work of general utility, may be done by a county, or a city, for a similar work which is especially useful to such county or city, provided the state refuses to do it herself, and permits it to be done by the local authorities."

In *Rogers vs. Burlington*, 3 *Wallace*, 654, it is said by Mr. Justice Clifford, that "Railways * * as a matter of usage, founded on experience, are so far considered by the courts as in the nature of improved highways, and as indispensable to the public interest and the successful pursuit even of local business, that a state legislature may authorize the towns and counties of a state, through which a railway passes, to borrow money, issue their bonds, subscribe for the stock of the company, or purchase the same with the view of aiding those engaged in constructing or completing such a public improvement; and that a legislative act conferring such authority is not in contravention of any implied limitation of the power of the legislature. Decisions to that effect have very much increased in number within the last few years, and are constantly increasing both in the state and federal courts, until it may be said that the rule here laid down pervades the jurisprudence of the United States. Exceptional opinions advancing the opposite doctrine may be found, but they cannot be regarded as sound, in view of the fact that the weight of authority is very greatly the other way." See also, *Gelpcke vs. City of Dubuque*, 1 *Wallace*, 175; *Meyer vs. Muscatine, Ib.* 384; *Stewart vs. Board of Supervisors of Polk Co.*, 30 *Iowa*, 9; and cases cited in Cooley Const. Lim. 189 et seq., and in Redfield on Railways, § 230.

There are certain franchises which, says Chancellor Kent, [3 *Com.* 458] " are understood to be royal privileges in the hands of a subject. The privilege of making a road, or

establishing a ferry, and taking tolls for the use of the same, is a franchise, and the public have an interest in the same."

We think that no further authority or reasoning are required to show that to provide the public with necessary and convenient ways of travel and transportation, is an essentially public function, which may be performed by the state itself, or may in the discretion of the government be devolved upon a private corporation, or an individual, and that in either case the function retains its public character. In the eye of the law, railways are modern public highways, and while railway corporations are private corporations, they are created to serve distinct public uses—uses of great public interest—and are charged with public duties, and on these grounds, and for public purposes, enjoy privileges and powers, which as franchises partake of the nature of sovereignty. 5 *Am. Law, Rev.* 155.

Nothing more need be said to show that a donation of money or bonds, for the purpose of securing the construction of a railroad, is a donation for a public purpose. And it follows, that the taxation complained of in this instance, being for a public purpose, was not only taxation in form, but taxation in its nature and in fact.

It is objected to the taxation in this case that the money to be raised is to be *given* to the railroad company. So far as the question of power to tax is concerned, we think it quite unimportant whether the money to be raised is to be given to the company, or loaned to it, or applied to pay for subscriptions to its stock. *Stuart vs. Board of Supervisors, supra.* As remarked by Chief Justice Black, "the right to tax depends upon the ultimate use, purpose and object, for which the fund is raised." If, as we have endeavored to show, the purpose of constructing a railroad is a public purpose, it is competent for the legislature to exercise the taxing power in its aid;

and the manner in which such aid is to be afforded is a matter of legislative discretion. If it is thought to be better that an outright gift of money should be made, than that the city should become a stockholder in the road, there is nothing to prevent the former course from being adopted. If the legislature can do this thing at all, what objection can there be to the doing it in the best way ?

It is further argued, that the taxing power is not properly exercised in this instance, because the railroad to be built is outside of the limits of St. Paul. A kindred objection was pressed in *Sharpless vs. Mayor of Philadelphia, supra,* and Chief Justice Black answers it in these words: "I have already said that it is the *interest* of the city which determines the right to tax her people." That interest does not necessarily depend on the mere location of the road. Therefore the location cannot be an infallible criterion. * * * It seems very plain that a city may have exactly the same interest in a road which terminates outside of her borders, as if the depot were within them. * * * If she has an interest in any part, she has probably an equal interest in every part. Railroads are generally made to connect important trading points with each other."

These remarks not only apply to this case, but their force is perhaps somewhat enhanced by the consideration, that they were made in a case in which it appeared that the nearest terminus of the railroad aided, was three hundred and forty six miles west of the city of Philadelphia, by which the aid was rendered.

The railroad in question in the case at bar, was a proposed highway to connect the navigable waters of the Mississippi, at St. Paul, with Lake Superior. That the inhabitants and business of St. Paul—its southern terminus—would derive peculiar advantages and conveniences from its construction,

Davidson et al. v. The County Commissioners of Ramsey County et al.

there was no reason to doubt at the time when the taxes objected to were authorized and levied; and that the city had a special and peculiar public interest in the road, has been abundantly demonstrated by its completion and operation. It is again objected to the tax in question, that the "donee" is a private corporation having the sole ownership and control of the railroad to be built. This objection is effectually disposed of by what has been before said in reference to the *public uses* for which the corporation has been created, the *public functions* which it exercises, and the right of the state to devolve such functions upon it.

Another objection is that the tax complained of is not within the taxing power, because "the donee when it received the donation was already under a contract with the state to build this identical road, and held its franchises, and had received an enormous land grant, upon the condition that it would speedily build this road." If all this be admitted it proves nothing. The general power to tax for the purpose of promoting the construction of railroads existing, and this road being one in which the city had a peculiar public interest, it was for the legislature and the city authorities to determine whether this was a proper case for the exercise of the taxing power. The question for them undoubtedly was, as it well might be, not whether the company had bound itself to construct the road, but whether it could, and probably would construct it. It was the road, not the company's obligation to construct it, that was wanted. If in the judgment of the legislature and city authorities it was necessary in order to secure the completion of the road to aid in its construction, and these bonds were issued accordingly, they were issued in the exercise of a discretion which we have no power to review.

It remains to consider sundry objections which are made to

the taxes sought to be enjoined in this action, upon the ground that they are forbidden by the state constitution.

The constitution, in our opinion, contains no' restriction upon the general power of taxation, which in any way, either expressly, or impliedly, prohibits the taxation complained of in this case.

Plaintiffs' counsel argues that such a restriction is found in *Sec 5, Art. XI*, which reads as follows, viz.: "Any county or township organization shall have such power of local taxation as may be prescribed by law."

It is argued that in accordance with the maxim "*Inclusio unius*," &c., this section forbids the taxation objected to, because it is not local taxation. Conceding, however, that this section is applicable to the city of St. Paul, we are of opinion that the taxation in question is *local* in the constitutional sense.

The effect of this provision of the constitution is simply to authorize the legislature to delegate to county and township organizations the power of taxing themselves. The power of local taxation meant, is the power of taxing property which may properly be subjected to taxation in the place where such local organizations exist, that is, within the geographical limits of the county or township as the case may be.

It is urged that this construction gives no effect to the word "local," because no power of taxing property other than such as is above mentioned could be conferred upon towns and counties; but we think the criticism is too refined. The constitution was made by and for the plain people, and even if the counsel be right in supposing that, in the sense we ascribe to it, the word "local" is superfluous, it at any rate serves to make express, and put beyond doubt, that which might otherwise, in the popular mind, well be of doubtful implication.

Plaintiffs' counsel further refers to secs. 5, 6 and 10, of art. IX, of our constitution, which forbid the state from contract-

ing debts for works of internal improvement, and from loaning its credit in aid of any corporation, &c.

The argument is, that as the state could not issue bonds and raise taxes to pay them, as the city has done in this instance, therefore, its subordinate political subdivisions cannot do so. But this does not follow.

It is sufficient to say that the prohibition is, in terms, expressly confined to the state, and does not extend to cities, counties and towns.

Whatever may be thought of the policy of permitting aid to be given to railroad corporations by the state, or by any of its inferior members, there are obvious reasons why the people might see fit to deny to the state at large authority in this respect, which they would not withhold from counties, cities and towns. This would be but one more illustration of the familiar fact, that the people have a great deal more confidence in *themselves,* as personal managers of public affairs, near at home, than in the delegated management of the same by their representatives, at a distance.

These are the only provisions of our constitution relied upon by plaintiffs' counsel, or upon which we feel it our duty to make special comment ; and with reference to the constitution at large, we can only repeat that in our opinion it contains no prohibition, express or implied, of the taxation in question.

It will be seen then, that, in our opinion, the taxation sought to be enjoined in this case, is taxation in form and fact, and in its essential nature, and is not prohibited by the constitution, either expressly or by implication.

The order overruling defendants' demurrer to the complaint is accordingly reversed.

Davidson et al. v. The County Commissioners of Ramsey County et al.

After the foregoing opinion was filed, the supreme court of the United States, at the December term, 1872, in the case of *The Town of Grand Chute, Plaintiff in Error, vs. George W. Winegar, Defendant in Error*, delivered an opinion upon questions similar to those in this case. The opinion is published in the *Chicago Legal News, vol. 5, No.* 29, and the syllabus of the case by the editor is as follows:

"The legislature of Wisconsin authorized the supervisors of the town of Grand Chute to make a plank road subscription to the amount of $10,000. The bonds in question were signed by the chairman of the board of supervisors of that town, and recited that the subscription had been made by the supervisors of the town, and that these bonds were issued in pursuance thereof for the purpose of carrying out the provisions of that act; the plaintiff was its *bona fide* holder for value of the bonds in suit, and his title accrued before maturity. The court held the cases cited to be a sufficient answer to the numerous offers to show want of compliance with the forms of law, or to show fraud in their own agents."—REPORTER.