JOHN D. BLAKE, *et al.*

*vs.*

THE WINONA AND ST. PETER RAILROAD CO.

The right to make and maintain a railway, and take toll or fare, is a franchise; a privilege or immunity of a public nature, which cannot be exercised without legislative authority.

In the hands of an individual or corporation it is a privilege of the sovereign in the hands of a subject, and originally in the sovereign's control in every respect.

The legislature may, from time to time, regulate the use of the franchise, and limit the amount of the toll which it shall be lawful to take, unless they have deprived themselves of that power by a legislative contract with the owners of the road.

The statutes of the territory and state, under which the defendant derives its existence, and its rights and franchises, nowhere expressly grant to defendant any authority to charge any toll for freight or passengers carried over its road.

Assuming, however, that thereunder the defendant by necessary implication has as one of its essential franchises and vested rights, the right to make and receive some charge for freight and passengers carried over its road, this is a grant to the defendant by the sovereign of a right simply to take toll; but it is neither expressly, nor by necessary implication, an agreement on the part of the state with the defendant, that the state will never assume to regulate the use of such franchise, and limit the amount of tolls the defendant may take, and the state retains such right of regulation.

*Held*, therefore, that the act of 1871 ch. 34, entitled "an act to regulate the carrying of freight and passengers on all railroads in this state," and fixing a maximum rate of toll for such carriage, is not unconstitutional

Blake et al. v. The Winona and St. Peter Railroad Co.

with respect to the defendant, either as impairing the obligation of a contract, or as an usurpation by the legislature of judicial authority.

Said act fixed a maximum toll for the transportation of such goods as those of the plaintiffs over defendant's road.  By said rate defendant would have been entitled to demand and receive of the plaintiffs, for the service performed in the transportation of their goods from Winona to Rochester, the sum of 57 cents.  The sum actually claimed by defendant, viz., $1, was in accordance with the rates of freight upon property of that description established by the regular published tariff bills of defendant, and was the same rate and no greater than that usually charged by defendant for such service.  It was stipulated by the parties, in and for all the purposes of this action, that, if such act was valid, operative and applicable to the defendant in this case, then and in such case judgment should be for the plaintiffs, otherwise for defendant.  *Held*, that said act is valid, operative and applicable to the defendant in this case, and that the judgment appealed from must be reversed, and judgment entered for plaintiffs.

This action was brought in the district court, for Olmsted county, to recover possession of two bales of cotton cloth, the property of plaintiffs ; the object of the action being to test the constitutionality of *Chap.* 24, *of the General Laws of* 1871, entitled, " An act to regulate the carrying of freight and passengers on all railroads in this state," which took effect, by its terms, May 1, 1871.

The goods were sent by the plaintiffs from Chicago, Illinois, by railroad, consigned to themselves at Rochester in this state, their residence and place of business.

The defendant is a corporation created by the laws of the state and late territory of Minnesota, and owns and operates a line of railroad, running from Winona, within this state, to Rochester, a distance of fifty miles, and thence westward.

The defendant, in June 1871, received the goods at Winona from the preceding carrier, in the usual course of transportation, paying $2.24 as advanced charges, and carried them on its road from Winona to Rochester.  There was no express

contract between plaintiffs and defendant for the carriage of the goods on defendant's road.   Upon the arrival of the goods at Rochester, the plaintiffs tendered the amount of the advanced charges, and the sum of fifty-seven cents, as freight from Winona to Rochester, and demanded the goods.   The defendant, however, demanded one dollar as freight on its road, in addition to the advanced charges, and refused to deliver the goods until such sum was paid.

The act above mentioned established a maximum rate of charges for the carriage of freight on all railroads doing business within this state.   It was stipulated, for the purposes of this action, that the amount tendered by plaintiffs was in accordance with the rates established by the act; that the amount of one dollar claimed by defendant was its usual rate for transporting like goods from Winona to Rochester, and was in accordance with its published tariff bills; and that if the act were valid, and applicable to defendant, judgment should be for plaintiffs, otherwise for defendant.

A jury trial was waived, and the action was tried by the court.   Judgment was ordered and entered for defendant, and the plaintiffs appeal.

W. P. CLOUGH, for appellants, cited to the point that every presumption must be in favor of the validity of legislative enactments, *Cooley's Cons. Lims.* 88, 89 ; *Thorpe vs. Rutland & B. Ry. Co.* 27 *Vt.* 142 ; *Leggett vs. Hunter,* 19 *N. Y.* 445 ; *People vs. Monell,* 21 *Wend.* 563 ; *Ex parte McCullom,* 1 *Cowen,* 550 : that the authority to build and maintain a railway is a franchise strictly public in character, and such railway when constructed is a public highway, 1 *Redf. on Railways,* 87 ; *Talcott vs. Pine Grove, Bench and Bar, Jan'y,* 1872 ; *Beekman vs. Saratoga & Schenectady R. R.* 3 *Paige,* 45 ; *Bloodgood vs. Mohawk & Hudson R. R.,* 18 *Wend.* 2 ; *Lumford vs. Stearns,* 4 *Cush.,* 61 ; *Davidson*

*vs. Comm'rs of Ramsey Co.* 18 *Minn.* 482; that the right to demand tolls on public lines of transit is an extraordinary power, a prerogative franchise, and can be conferred by express grant alone, and such grant must be in unmistakable terms, *Leeds & Liverpool Canal Co. vs. Hastler,* 1 *B. & C.* 424; *Stombridge Canal Co. vs. Wheeley,* 2 *B. & Ad.* 793; *Dock Co. vs. Brown, Id.* 58; *Dock Co. vs. La Marche,* 8 *B. & C.* 42; *Barrett vs. Stockton & Darlington Ry.* 2 *Eng. Ry. & Canal Cases,* 324; *Charles River Bridge vs. Warren Bridge,* 11 *Peters,* 420; *Perrine vs. Chesap. & Del. Canal Co.* 9 *How.* 172; *Rice vs. P. R. Co.* 1 *Black,* 358; *Binghamton Bridge Case,* 3 *Wall.* 51; *Camden & Amboy R. R. vs. Briggs,* 2 *Zabr.* 623; *Canal Bridge vs. Gordon,* 1 *Pick.* 296; *State of Vermont vs. Boston, Concord & Montreal R. R.* 25 *Vt.* 433; that the state has power to regulate charges for the use of railways within its limits, unless it has deprived itself of such power by legislative contract, 3 *Paige,* 45; 18 *Wend.* 10; *West River Bridge vs. Dix,* 6 *How.* 507; *Charles River Bridge vs. Warren Bridge,* 7 *Pick.* 344; 11 *Minn.* 515.

MITCHELL & YALE, for respondents, cited to the point that a private charter is a contract, *Dartmouth College vs. Woodward,* 4 *Wheat.* 518; *Providence Bank vs. Billings,* 4 *Peters,* 514; *Gordon vs. Appeal Tax Court,* 3 *How.* 133; *Planters Bank vs. Sharp,* 6 *How.* 301; *Curran vs. Arkansas,* 15 *How.* 304; *Binghamton Bridge Case,* 3 *Wall.* 51; 3 *Parsons' Contracts,* 531; *Angell & Ames on Corp.* § 767; *Cooley's Const. Lims.* 279; *Wilmington R. R. vs. Read,* 13 *Wall.* 264; that a railroad charter is such a private charter, 3 *Parsons' Contracts,* 532; *Cooley's Const. Lims.* 279; *Angell & Ames on Corp.* §§ 31-35; *Bruffet vs. G. W. R. R.* 25 *Ill.* 353; *People vs. J. & M. Plank Road Co.* 9 *Mich.* 285; *Bridge Co. vs. Hoboken Co.* 2 *Beasley,* 81; *Turnpike Co. vs. Wallace,* 8 *Watts,* 316; *Wash. Bridge Co. vs. State,* 18 *Conn.* 53; *Commonwealth vs. New Bedford Bridge Co.* 2 *Gray,* 339; *Bona-*

*parte vs. Camden & Amboy R. R.* 1 *Baldw.* (c. c.) 222 ; *R. & G. R. R. vs. Davis*, 2 *Dev. & Batt.* 451 ; *Neustadt vs. Ill. Cen. R. R.* 31 *Ill.* 484 ; *Thorpe vs. Rutland & B. R. R.* 27 *Vt.* 140 ; *Smeed vs. Indianapolis R. R*, 11 *Ind.* 104 ; *Ten Eyck vs. Del. & Rar. Canal Co.* 3 *Harr.* 200 ; *Tinsman vs. Belv. & Del. R. R.* 2 *Dutch.* 148 ; 13 *Wallace*, 264 ; that respondent, by receiving a land grant from the state, did not thereby become more subject than before to state legislation, except so far as expressly provided by the terms and conditions of the grant, *Mills vs. Williams*, 11 *Ired.* 561 ; *Angell & Ames on Corp.* §§ 32–34 ; *Bank of U. S. vs. Planters' Bank*, 9 *Wheat.* 907 ; *Turnpike Co. vs Wallace*, 8 *Watts*, 316 ; *Bowdoin College Case*, 1 *Sumner*, 276 ; *University vs. Louisville*, 15 *B. Mon.* 642 ; 31 *Ill.* 484 ; 2 *Redf. on R'ys*, § 233 ; that the respondent's authority to exercise the right of " eminent domain, does not make it a public corporation, *Miller vs. Troost*, 14 *Minn.* 365 ; *Angell & Ames on Corp.* § 31 ; 31 *Ill.* 148 ; that respondent by its charter being authorized to operate its railroad, transport freight and passengers and charge compensation therefor, the right to charge a *reasonable compensation*, being the essential franchise of any railroad company, is granted to respondent in its charter by necessary implication, 2 *Kent* 344 ; *Bank of Augusta vs. Earle*, 13 *Peters*, 587 ; *Runyon vs. Coster*, 14 *Id.* 122 ; *People vs. Utica Ins. Co.* 15 *Johns.* 383 ; *N. Y. Fire Ins. Co vs. Ely*, 5 *Conn.* 560 ; *Berlin vs. New Britain*, 9 *Id.* 180 ; *McCartie vs. Orphan Asylum*, 9 *Cowen*, 462 ; 27 *Vt.* 151 ; *Linton vs. Sharpsburg Bridge Co.* 1 *Grant*, 414 ; *Tenn. & Ala. R. R. vs. Adams*, 3 *Head.* 596 ; *Enfield Bridge Co. vs. Hartford & N. H. R. R.* 17 *Conn.* 454 ; *Coolidge vs. Williams*, 4 *Mass.* 140 ; *Downing vs. Mt. Wash. R. R.* 40 *N. H.* 230 ; 2 *B. & Ad.* 792 ; *Comyn's Digest*, "*Grant*," 12 ; *Sutton's Hospital*, 10 *Coke Rep.* 24 ; *Bolton vs. Bull*, 2 *H. Blackst.* 463 ; *Somerset vs. Dighton*, 12 *Mass.* 383 ; *Whitney vs. Whitney*, 14 *Mass.* 88 ; *Holbrook vs. Holbrook*, 1 *Pick.* 248 ; *Angell & Ames*, § 111 ;

*Perrine vs. Chesp. & Del. Canal Co.* 9 *How.* 172 ; *Straus vs. Eagle Ins. Co.* 5 *Ohio St.* 59 ; *Ex parte Eaton College*, 1 *Eng. L. & Eq.* 51 ; *Rex vs. Cotterel*, 1 *B. & A.* 81 ; *Merchants' Bank vs. Central Bank*, 1 *Kelly*, 418 ; *Chesap. & Del. Canal Co. vs. Ohio R. R.* 4 *Gill & Johns.* 1 ; *State vs. Noyes*, 47 *Maine*, 189 ; *White vs. Utica & Syracuse R. R.* 14 *Barb.* 559 ; that any act which impedes, repeals or modifies respondent's right to charge such reasonable compensation, without respondent's assent, unless such right of repeal is expressly reserved to the state in respondent's charter, is unconstitutional and void, and this whether respondent's right to charge a reasonable compensation was granted expressly or by necessary implication, *Wales vs. Stetson*, 2 *Mass.* 143 ; *Cooley's Cons. Lims.* 279, 292 ; *Green vs. Biddle*, 8 *Wheat.* 75 ; *McCracken vs. Hayward*, 2 *How.* 608 ; 9 *Mich.* 285 ; 4 *Wheat.* 418 ; *Maysville Turnpike Co. vs. How*, 14 *B. Mon.* 426 ; 27 *Vt.* 140 ; *Galena R. R. vs. Appleby*, 28 *Ill.* 290 ; *Irvine's Appeal*, 16 *Penn.* 266 ; *People vs. Manhattan Co.* 9 *Wend.* 351 ; *People vs. Marshall*, 1 *Gilman*, 672 ; that the question, what are reasonable rates of compensation, is a question of interpretation or construction of respondent's charter which belongs exclusively to the judicial branch of the government, and cannot be determined by an act of the legislature, 2 *Gray*, 339 ; 47 *Maine*, 189 ; *Wyneham vs. People*, 13 *N. Y.* 391 ; *Greenough vs. Greenough*, 11 *Penn.* 494 ; 16 *Penn.* 266 ; *Dechastellux vs. Fairchild*, 15 *Penn.* 18 ; *Wyman vs. Southard*, 15 *Wheat.* 46 ; *Newland vs. Marsh*, 19 *Ill.* 382.

*By the Court.*– RIPLEY, CH. J.—This action was brought to test the constitutionality of *Gen. Laws of* 1871, *ch.* 24, entitled "an act to regulate the carrying of freight and passengers on all railroads in this state."

By the rates established by said act the defendant would have been entitled to demand and receive of the plaintiffs, for

the service by it performed in the transportation of their goods from Winona to Rochester, the sum of 57 cents.

The sum actually claimed by the defendant, viz.: $1, was in accordance with the rates of freight upon property of that kind, established by the regular published tariff bills of defendant, and was the same rate and no greater than that usually charged by defendant for such service. It was stipulated by the parties, in and for all the purposes of this action, that, if such act is valid, operative, and applicable to the defendant in this case, then and in such case judgment should be for the plaintiffs, otherwise for the defendant.

The defendant derives its existence, and its various rights and franchises, so far as is material to the present question, under the following acts of the legislature of the Territory and State of Minnesota.

*Laws* 1855, *ch.* 27 ; 1857, *Extra Session, sub. ch. 2 of ch.* 1 ; *Ib. ch.* 15 ; *Special Laws* 1862, *ch.* 19 ; *Special Laws*, 1866, *ch.* 9.

By none of them is any authority to charge any toll for freight or passengers carried over its road expressly granted to defendant.

But the court below finds as follows :

"1. That under and by virtue of the defendant's act of incorporation, and the several other acts pertaining to the subject matter, accepted and acted on by the defendant, it, prior to the passage of said act of 1871, possessed the implied right to transport passengers and freight over its road, and make and receive *some* charges for such service.

"2. That this right, though one arising by necessary implication only, is one of the essential franchises of the corporation, which became vested in the company immediately upon its acceptance of its charter, and immediately became as sacred as any other of its rights."

Whether or not the district court was right in thus conclu-

ding, it is unnecessary to consider.  We assume, for the purposes of this case, that it was, and that the defendant possessed, as one of its essential franchises, the vested right to demand and receive *some* charges for such transportation of freight and passengers.

We are, nevertheless, of the opinion that the act in question is valid, operative and applicable to the defendant in this case.  It is admitted to be so, unless it conflicts with those provisions of the state and federal constitutions which prohibit the passage of laws impairing the obligation of contracts, or unless it is an usurpation by the legislature of judicial authority.

The contract between the state and the defendant is, (as we assume,) that it may make *some* charges for such service as aforesaid.  Its charter may be amended by any subsequent legislature in any manner not destroying or affecting defendant's vested rights.  *Sec.* 15.

The act in question fixes a *maximum* toll for the transportation of such goods as those in question in this case over the defendant's road.  Does it impair the obligation of the contract above stated, for the state thus to fix a limit to the amount the defendant may charge ?

The right to demand and receive *some* toll, is, we assume, one of its essential franchises.

A franchise, which, in England, is a branch of the royal prerogative, subsisting in the hands of a subject, in this country can only be derived from the legislature.  Franchises are here, as in England, privileges of the sovereign in the hands of the subject.  Whoever claims an exclusive privilege with us must show a grant from the legislature.  A privilege or immunity of a public nature, which cannot be legally exercised without legislative grant, is a franchise.  2 *Bl. Com.* 37 ; 2 *Kent,* 459 ; *People vs. Utica Ins. Co.* 15 *Johns.* 358.

Inasmuch as it is the duty of the government, with respect to the welfare of the public in general, and of trade in particular, to provide safe and commodious ways of communication, whence flows the right of the state to oblige those who make use of the ways it provides to contribute to the expense of making and maintaining them, *i. e.*, the right to levy tolls, it follows that the right to make roads and levy tolls is a prerogative of sovereignty, and, in the hands of a subject, is a franchise;—a privilege or immunity of a public nature, which cannot be legally exercised without legislative authority. *Vattel, Book* 1, *ch.* 9, §§ 101, 102; 2 *Kent*, 458, 459.

Nor is there now any question, at least in this court, that the right to make and maintain a railway, and take tolls or fares, is such a privilege or immunity, for the same reason that the right to build an ordinary road, and levy tolls thereon, is, viz.: that a railroad is but an improved modern highway, one which it is the duty and interest of the government to construct, where the public interest and convenience demand it. *Davidson vs. Commissioners of Ramsey Co.* 18 *Minn.* 482; 18 *Wend.* 47; *Sharpless vs. Mayor, &c.* 21 *Penn. St.* 147; 25 *Vt.* 433, 441. See also, *Olcott vs. Supervisors Fon du Lac Co., U. S. Supreme Court, Dec. Term,* 1872.

This franchise of the defendant, is a privilege of the sovereign in the hands of the subject. The subject is, indeed, in the present case, an artificial being; but the sovereign might have placed this privilege in the hands of a natural person, and it might have been *his* property, as it is the defendant's property.

In the use the defendant shall make of its property, this defendant is as entirely subject to legislative control as such supposed natural person would have been. 11 *Minn.* 515.

The franchise in question, being a privilige of the sovereign,

Blake et al. v. The Winona and St. Peter Railroad Co.

and which the sovereign could alone impart, was originally in the sovereign's control in every respect.

It was, therefore, entirely competent for the legislature, in conferring such franchise, to retain authority to control the defendant in its exercise. Possessing such right originally, it must continue to possess it; that is to say, it *must retain* it in any given case, in so far as it does not part with it by conferring exemption therefrom upon the recipient of the franchise.

It follows, as respects this franchise, that the sovereign, which conferred it, retains its original right to control the defendant in its exercise of the same, in so far as it has not surrendered its authority.

The contract here, we assume, is that the defendant may take *some* tolls. That is what the sovereign granted it. To the extent to which such a grant necessarily involves exemption from legislative control, as aforesaid, the sovereign has surrendered such original right of control—no further. " The legislature may also from time to time regulate the use of the franchise, and limit the amount of the toll which it shall be lawful to take, in the same manner as they may regulate the amount of toll to be taken at a ferry, or for grinding at a mill, unless they *have deprived themselves of that power by a legislative contract with the owners of the road."   Per Walworth, Ch. in Beekman vs. Saratoga & Schenectady R. R., 3 Paige, 45.

The position above quoted was not necessary to the decision of the case before the chancellor ; but we cite it as expressing our own views, as well as those of an eminent jurist, on this point, expressed when railroads were in their infancy. It is one of those plain and simple propositions, as it seems to us, upon which, because it is so indisputably true, there can be no accumulation of authorities.

But, before railroads were known in this country, a similar position had been taken with respect to a ferry franchise.

" The legislature," says Ch. J. Parker, " having originally the right to grant the exclusive privilege of transportation over public waters, and to establish tolls, etc., the grant of this privilege would always be considered as subject to the superintendence of the legislature, unless that was expressly surrendered." *Charles River Bridge vs. Warren Bridge,* 7 *Pick.* 511.

Has the state surrendered it with respect to *this* highway ? Is an agreement that the defendant may take *some* tolls, expressly, or by necessary implication, an agreement that the state will never assume to regulate the use of the franchise and limit the amount of tolls the defendant may take ?

This question must be answered in the negative. The state, we assume, has conferred upon the defendant the right to make *some* charge, *i. e.* to take *some* toll. Not any specified rates of toll, nor to take tolls within any designated limits, nor to take reasonable tolls. The right conferred is simply to take tolls. If this right cannot, in the nature of things, exist, along with the right aforesaid in the legislature, to regulate its use, and limit the amount of tolls the defendant may take, then of course the right of contract is gone.

But it is obvious that the two can co-exist, *e. g.* a right simply to take *some* toll can be exercised to its full extent under a law fixing a *maximum* rate of toll; for, in taking such *maximum* rate, *some* toll is taken, and the extent of the right is only to take *some* toll.

As, therefore, the fixing of maximum rates of toll by the act of 1871, does not interfere with defendant's right to take *some* tolls, it is not unconstitutional, as impairing the obligation of any contract between the defendant and the state, and it was competent for the legislature to enact it in the exercise of its

unsurrendered authority, to control the defendant in the exercise of the franchise conferred.

Nor is the act in question an usurpation, by the legislature, of judicial authority. The legislature represents the sovereign in two capacities. *First,* it represents the sovereign as a party contracting with the defendant ; *Second,* as the sole law-making power. In the latter capacity it acts for the sovereign in exercising the sovereign right of control over franchises in the hands of the subject, and as this right of control can only be exercised through the establishment of some rule of conduct, that is to say, by some *law,* it is necessarily the function of the legislature, as the sole law-making power, to establish such rule of conduct by legislation.

We have said that the franchise in question is not the right to take reasonable tolls. As the respondent contends that it is, and its argument to prove this act unconstitutional is wholly based on that proposition, it is necessary to state the grounds of our own opinion.

The right to take *some* toll under this charter is, as the court below found, but an implied right. It arises by " necessary implication only," if it arises at all. It can also be by necessary implication only, if at all, that it is a right to take reasonable toll.

"Whatever is essential to the enjoyment of the thing granted will be necessarily implied in the grant." *Co. Lit.* 56 *a ; Plowd.* 317 ; *Saunders case,* 5 *Co.* 12 *a ; Morton, J., in Charles River Bridge vs. Warren Bridge,* 7 *Pick.* 345, 459.

Without undertaking to pass upon the correctness, if this position applied, as the learned judge applied it, to grants from the state, the converse of the proposition will probably be admitted to be true, viz.: that nothing, which is *not* thus essential, will be thus implied. It is certainly not essential to the enjoyment of a right to take *some* toll that the toll to

be taken should be reasonable. Therefore a right to take reasonable toll is not implied in the case before us.

The court below, however, finds as follows on this point, viz.:

"3d. That in the absence of any provision in the charter, or other acts accepted by the defendant, fixing the *amount* of the charges for such service, the law, as in other like cases, fixes them at *reasonable rates.*"

Its reasons for the conclusions are thus stated :

" On this point it would seem that there can be no essential difference between this and any ordinary contract, similar in character, between private individuals ; the contract, on the one hand, calling for the performance of certain labor or other duties, and, on the other, no compensation being specifically fixed. The law in that case, as in this, would fix the compensation at a reasonable one, to be determined, in case of controversy, by judicial examination and determination, from all the facts of the case."

The district court here, as it seems to us, confounds two entirely different things. The " other like cases," by which the court was guided in arriving at its said conclusion, are the contracts between private individuals above mentioned. As, if one agrees to perform work and labor for me and I agree that I will pay him for it, without more, he can recover upon a *quantum meruit,* because the law implies a promise on my part to pay him what such service was reasonably worth.

But that is not a " like case" to the contract before us between the state and this defendant, with respect to which our inquiry is, *what* did the state grant ?

The contract before us is not a contract by the defendant, on the one hand, to perform labor or other service for the state, and by the state, on the other hand, to pay defendant for the same. It is a contract by which the state granted to

Blake et al. v. The Winona and St. Peter Railroad Co.

the defendant the exclusive right to make, maintain and operate this highway with its cars and engines, and to levy a toll upon that portion of the public using the same.

The state may be supposed to have been moved to make the grant by considerations of the benefit expected to accrue to the public by the making and maintenance of this highway by the defendant.

The service for which the district court finds that the defendant is entitled to receive what it is reasonably worth, is performed for those who travel and send goods over its road, those as to whom, if the defendant were an ordinary carrier on the highway, the law, in the absence of a special contract, would imply a promise to pay what such service was reasonably worth.

The contract the district court had in mind was a supposed implied contract between defendant and these plaintiffs, for instance, or any other individual for whom it carries freight, that, in consideration of such carriage, the consignor will pay a *quantum meruit* therefor.   But it takes toll by virtue of no such implied contract.

The title of the defendant to its right to demand compensation for this service is not derived to it upon common law principles, and is not to be measured by the rules of the common law; and whether it may lawfully demand compensation from a person, who uses its highway for the carriage of goods in the only way in which it can be used, depends upon the language of its charter, and not upon the rules of the common law.   *Perrine vs. Canal Co.*, 9 *Howard*, 172.

The right to exact tolls, or charge freights, is granted for a service to the public.   The defendant is compellable to permit the public to use this highway in the way in which it can be used.   *Olcott vs. Supervisors, supra.*

Being a public highway, the defendant's road, under this

charter, is as free to the public, paying toll, as any other high-way ; and it would certainly have been none the less a public highway, if the legislature, contrary to what we have assumed to be the case, had not granted the defendant the right to take toll. If it had accepted a charter, which denied to it the right to take toll, it is impossible to see upon what principle it could contend that it was not compellable to permit the public to use it without paying toll.

It is certain that the defendant's right to toll does not rest upon any implied promise, on the part of these plaintiffs, for instance, or any other consignor, to pay it what the transportation of their property was reasonably worth.—*Perrine vs. Canal Co., supra.*

The defendant *owns* the right to levy a toll. It was an attribute of sovereignty, and the sovereign has granted it to the defendant. The contracts between individuals, to which the district court refers, have no analogy therefore, to the contract before us. They furnish no basis for a conclusion that, in the present case, the sovereign has agreed with the defendant that it may demand and receive from those who use its road what such use is reasonably worth.

The state granted to defendant this right to levy *some* toll. The contract does not fix the rates of toll which it may levy. The only logical conclusion is, that the defendant may fix them itself, subject to legislative superintendence.

What was said by Mr. Justice Morton in the Charles river bridge case is applicable here, except as to any argument from usage. " It is apparent, from the examination of the several acts and the usage under them, that the college took and held the (ferry) franchise, subject to the general super-intendence and regulation of the legislature of the common-wealth. Neither the management of the ferry, nor the number of boats to be employed, *nor the rate of toll* is established

in either of these acts. Was the power to regulate these subjects granted to the college, or reserved to the legislature? If the former, the public convenience, so far as related to transportation across the river by this ferry, was made to depend upon the pleasure of an interested corporation, instead of the sovereign power of the state. It cannot be supposed that the college had the exclusive right to the transportation across the river, and also the unlimited power to fix the rate of toll for such transportion. The college, in accepting the right granted, assumed corresponding obligations. If they were to receive the profits of the ferry, they were bound to furnish reasonable accommodation for the public, to submit to the general regulation of ferries throughout the state, and to take such just and reasonable toll as from time to time the legislature should establish." *P.* 448.

It may be asked if this is the only limit, if the defendant can oppress the public with impunity by exacting excessive tolls, so long as the legislature does not see fit to interfere?

It is not necessary to consider how, upon our assumption aforesaid, it might have been under the defendant's original act of incorporation, and other acts relating to it prior to the act of Feb. 28th, 1866. That act, which the defendant accepted, extended the time for its performance of the conditions, upon which any right on its part to the franchises which it now owns was contingent, but upon the express condition that it should " be bound to carry freight and passengers upon reasonable terms." There was, therefore, prior to the act of 1871, that express limitation upon any discretionary right to fix the rate of toll and fare.

Nor does the act of 1866 imply any surrender by the state of its power to regulate tolls. There can be no plainer *non sequitur* than to say that, because the defendant cannot right-

fully levy excessive toll, therefore the state has parted with its right to regulate its rates of toll.

As these considerations dispose of the present case, it is unnecessary to consider whether, supposing the conclusion of the district court last above noticed to be a correct one, its conclusion that the act of 1871 aforesaid was unconstitutional would necessarily follow; and as to that we give no opinion. In conformity with the agreement of the parties the judgment appealed from must be reversed, and judgment entered for the plaintiffs.