STATE v. PETER NELSON.

December 2, 1898.

Nos. 11,456—(22).

Perjury—Indictment—Assignments of Perjury.

In a prosecution for perjury, the indictment set out in extenso the testimony of the defendant, consisting of a number of distinct and separate statements of fact, followed by a general allegation that all of this testimony was false, but contained no "assignment of perjury"; that is, no special averments negativing any of the facts alleged to have been falsely deposed, or specifying wherein they were false. *Held*, that the indictment did not inform the accused of "the nature and cause of the accusation" against him, within the meaning of art. 1, § 6, of the constitution of the state.

Same—G. S. 1894, § 7239, Form 24—Constitution.

The form (No. 24) of an indictment contained in G. S. 1894, § 7239, considered, and *held* that, if it was intended to dispense with the necessity of "assignments of perjury" or their equivalent, it is in conflict with this provision of the constitution.

Defendant was indicted and found guilty by a jury of the crime of perjury. From an order of the district court for Hennepin county, McGee, J., denying a motion for a new trial, defendant appealed. Reversed.

*A. H. Hall, L. R. Thian* and *John W. Arctander*, for appellant.

Form No. 24 of an indictment for perjury contained in G. S. 1894, § 7239, contravenes Const. art. 1, §§ 6, 7, in that it dispenses with the "assignments of perjury." The principles that control the

interpretation of these constitutional provisions and their application to statutory forms of criminal indictments are clearly stated in State v. Learned, 47 Me. 426; Williams v. State, 12 Tex. App. 395; Murphy v. State, 24 Miss. 590; Bryan v. State, 45 Ala. 86.

The law is well settled that the "assignments of perjury" must be definite and certain and must consist of a detailed particularization of the truth and existence of the facts, which it is claimed the defendant falsified. 2 Archbold, Cr. Pl. & Pr. 1733, 1737; 2 Bishop, New Cr. Proc. §§ 902, 904, 918, 919; 2 McLain, Cr. Law, § 880; State v. Bishop, 1 Chip. (Vt.) 120; Com. v. Cook, 1 Rob. (Va.) 729; State v. Lea, 3 Ala. 602; Gibson v. State, 44 Ala. 17; State v. Mumford, 1 Dev. (N. C.) 519; Com. v. Sill, 83 Ky. 275; Com. v. Compton (Ky.) 36 S. W. 1116; Rohrer v. State, 13 Tex. App. 163; Turner v. State, 30 Tex. App. 691; Territory v. Lockhart, 8 N. Mex. 523; State v. Bixler, 62 Md. 354.

*H. W. Childs*, Attorney General, *Jas. A. Peterson*, County Attorney, and *C. W. Somerby*, Assistant County Attorney, for respondent.

Within the decision of this court this indictment is sufficient. Bilansky v. State, 3 Minn. 313 (427); State v. Ryan, 13 Minn. 343 (370); State v. Thomas, 19 Minn. 418 (484); State v. Stein, 48 Minn. 466.

In an indictment for perjury it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed. People v. Greenwell, 5 Utah, 112. It is not necessary that the false testimony be set forth in haec verba. Massey v. State, 5 Tex. App. 81; People v. Warner, 5 Wend. 271.

MITCHELL, J.[1]

The defendant was tried and convicted of the crime of perjury upon the following indictment:

"Peter Nelson is accused by the grand jury of the county of Hennepin, in the State of Minnesota, by this indictment, of the crime of perjury, committed as follows:

The said Peter Nelson, on the 17th day of November, A. D. 1897, at the city of Minneapolis, in said Hennepin county, then and there being, on his examination as a witness, duly sworn to testify the

[1] BUCK, J., did not sit.

truth on the trial of a criminal action between the state of Minnesota, plaintiff, and George A. Durnam, defendant, in the district court of the fourth judicial district, in and for Hennepin county, Minnesota, before the Honorable Charles B. Elliott, one of the judges of said court, which court had authority then and there to administer such oath, did then and there wilfully, unlawfully, feloniously, wrongfully and knowingly testify falsely that:

'No one of us (said defendant, George A. Durnam, and Halvor K. Halvorson meaning) went into the back room (a back room in a certain saloon on Nicollet avenue, in said city of Minneapolis, meaning) at any time during that visit, in my presence. I did not go back there (into said back room meaning). I can't remember that Mr. Halvorson or Mr. Durnam went back there (into said back room of said saloon meaning) while I was there. They (the said George A. Durnam and Halvor K. Halvorson meaning) did not go back there (the said back room in said saloon meaning) while I was there. So far as my recollection is, we (this defendant and said George A. Durnam and Halvor K. Halvorson meaning) all went out together. I remember it well, because I ordered a load of hay from Mr. Durnam. We (this defendant and said George A. Durnam and Halvor K. Halvorson meaning) had some talk of ordering the load of hay in the saloon at the bar, and, after I got outside of the door, Mr. Halvorson mentioned to me. I don't know if Halvorson mentioned it to me in the saloon (said saloon meaning) or outside. I could not say. I think he mentioned it in the bar that I could order the hay from Mr. Durnam, which I did when we came outside the door (the door of said saloon meaning). We (this defendant and said George A. Durnam and Halvor K. Halvorson meaning) were all three standing together, and I says to Mr. Durnam to be sure and deliver that hay before night, because I should be out of hay for my stock before night, and I left, and walked down towards Second street, and I did not stay there any longer. I was only in there (in said saloon meaning) a few minutes. I could not say which way they went. I left them (meaning said Durnam and Halvorson), and cut across the corner of Second street. As far as my remembrance is concerned, I think they (meaning said Durnam and Halvorson) did start down towards the city hall, but I wouldn't swear to that positively; that is my best recollection.'

That defendant then and there further did knowingly, feloniously and wilfully testify falsely that he did not some time during the month of December, 1896, before the grand jury of Hennepin county, at the time when the first indictment was found against George A. Durnam, on the charge hereinbefore mentioned, testify and say under oath 'that I introduced Halvorson to Durnam (said Halvorson and Durnam meaning) some place on Nicollet avenue; that I went into the saloon (said saloon meaning) with them (said Halvorson and Durnam meaning), and took them (said Halvorson

and Durnam meaning) into the back room into the saloon (said saloon meaning), and, after introducing them (said Halvorson and Durnam meaning), said, "Now, you fellows (said Halvorson and Durnam meaning) have got something to talk about, and I will leave you (said Halvorson and Durnam meaning) alone;" and that then I went out, and left them (said Halvorson and Durnam meaning) there in that back room (the back room of said saloon meaning), either in words to that effect or in substance,' all the matter so testified being material, and the testimony being wilfully, knowingly and corruptly false.

And the grand jury do further, on their oaths, say that said criminal action between the state of Minnesota and the said George A. Durnam, hereinbefore mentioned, was upon the trial of an indictment for a felony, to wit, for the crime of asking a bribe by a public officer, and that the said defendant did thereby commit the crime of perjury, as hereinbefore set forth, contrary to the statute in such casees made and provided, and against the peace and dignity of the state of Minnesota.

Dated at the city of Minneapolis, in said Hennepin county, this 18th day of February, A. D. 1898."

It will be observed that this indictment contains no "assignments of perjury," as they are technically termed; that is, no special averments negativing each fact falsely deposed, so as to specify wherein the testimony was false. There is merely a general averment that all the matter so testified to was false.

Nothing is better settled than that at common law it was absolutely necessary, in an indictment for perjury, to make direct and specific allegations negativing the truth of the alleged false testimony, by setting forth the true facts by way of an antithesis, and that a mere general allegation that the testimony was false was not sufficient. This requirement was not technical or a mere matter of form, but of the very essence of the indictment, and necessary in order to inform the accused of the nature and cause of the accusation against him, by setting out wherein or in what respect his testimony was claimed to be false. This, as a general rule, at least, is the only way by which he can be fully informed of the nature and cause of the accusation against him.

This will be apparent to any lawyer on a moment's reflection, without our resorting to illustrations. It will, of course, be more apparent when the alleged false testimony consists of a complex

statement of facts than when it consists of a simple statement of a single fact.

Counsel for the state concede this to have been the common-law rule, but contend that it has been changed by statute, and that this indictment is in accordance with form No. 24, given in G. S. 1894, § 7239, which has been approved in State v. Thomas, 19 Minn. 418 (484).

This form has been carried forward from territorial days. R. S. 1851, c. 119, § 67. It seems to have been original with the revisers, for we have been unable to find it elsewhere. Its language is peculiar, and it may well admit of doubt whether it was ever intended to do away with the necessity of "assignments of perjury," especially in view of the provisions of section 83 of the same chapter (now G. S. 1894, § 7253), which seem clearly to recognize the continued necessity for such assignments.

Unless this state is an exception, we know of no state or country where the common law prevails, in which it is not necessary, in an indictment or information for perjury, to specify, by "assignments of perjury" or their equivalent, wherein the testimony was false.

The briefs in State v. Thomas, supra, show that the point was barely made by counsel, without discussing it. The opinion of the court merely held that the indictment was sufficient, because it was in accordance with form No. 24, without discussion, and apparently without having their attention specially directed to the question whether "assignments of perjury" or their equivalent, specifying wherein the testimony was false, were not necessary in order to fulfil the constitutional requirement that the accused shall be informed of the nature and cause of the accusation against him. This was not unnatural, in view of the fact that in that case the testimony alleged to have been falsely deposed consisted of the simple affirmation of a single fact. And, in view of that fact, it may be (although we do not so decide) that the indictment in that case might be held to fulfil the constitutional requirement, although it contained no formal assignment of perjury.

The question was not raised or considered in State v. Stein, 48 Minn. 466, 51 N. W. 474.

While the doctrine of stare decisis should, within proper limits,

be adhered to, yet, inasmuch as a constitutional right of the citizen is involved, if the decision in State v. Thomas was erroneous it ought not to be followed, although it may have stood unchallenged for nearly 25 years.

Assuming, then, that form No. 24 does not require any specific allegations negativing the truth of the alleged false testimony and setting out wherein the testimony was false, but that all that is necessary in any case is to set out the testimony followed by a general allegation that the same was false, the question is, does this comply with section 6, art. 1, of the constitution of the state, which provides that,

"In all criminal prosecutions the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation"?

This information must, of course, be contained in the indictment by which he is accused and upon which he is tried. Const. art. 1, § 7.

This principle is not original with the constitution, but is as old as the common law itself. This constitutional provision is but declaratory of what the law has always been, and hence it is to be construed in its historical sense.

The legislature has a large discretion in prescribing, simplifying or modifying matters of form and practice, even in criminal prosecutions, but the exercise of this right is limited and controlled by the paramount law of the constitution.

The fundamental principle of the constitutional provision is that the accusation, whether by indictment or information, must be sufficiently specific fairly to apprise the accused of the nature of the charge against him, that he may know what to answer, and be prepared to meet the exact charge against him, and that the record may show, as far as may be, for what he is put in jeopardy. The legislature has no power to prescribe a form of indictment which does not fairly and fully meet this requirement. This is of the very essence of the charge, and not mere matter of inducement.

That an indictment for perjury does not fulfil the requirement, unless it contains definite and specific allegations, particularizing

wherein the testimony was false, is almost capable of conclusive demonstration. There are several different kinds of falsity upon which perjury may be predicated. What particular kind of falsity is claimed would not ordinarily be communicated to the accused by the mere statement that the evidence was false.

Again, in most cases the statements of fact falsely testified to are mixed, as well as compound or complex; that is, they contain some truth as well as falsehood, and consist of several facts, and not of the simple affirmation or denial of a single fact. It is usually necessary, in such cases, to set out the whole testimony, in order to render intelligible that upon which it is proposed to assign perjury. But, unless the indictment separates from the rest that which is meant to be relied on as false, and by direct and specific allegations negatives its truth by particularizing wherein it is false, how can the accused know what the precise charge is which he is to answer?

Take the indictment in this case as an example. It sets up in extenso fully a page of the defendant's testimony, consisting of statements of at least a dozen separate and independent facts, some of these statements being of a compound or complex nature; some of them affirmative, and others negative; some of them made positively, and others upon memory or belief. This is merely followed by a general allegation that all of this testimony was false, without in any way segregating from the rest that which is intended to be relied on as perjurious, or specifying wherein it is false.

If this can be done with one page or two pages of testimony, containing statements of a dozen different and distinct facts, it can be done with 500 pages of testimony, containing statements of 5,000 different facts. And if, in addition to this, a defendant can be convicted under such an indictment, if the jury find that any one of these statements was false, as was ruled in this case, the constitutional right of the accused to be informed of the nature and cause of the accusation against him would amount to very little.

We are clearly of opinion that the indictment in this case does not come up to the constitutional requirement.

As already suggested, it may be (although we do not decide the point) that, where the testimony set out in the indictment consists

of the simple affirmation or negation of a single fact, an allegation that the testimony was false would be sufficient, without any formal "assignment of perjury," but this is not such a case.

It would be useless to cite authorities to the mere proposition that at common law assignments of perjury were necessary, and of the very essence of the indictment, for that is elementary law; but, as bearing upon the proposition that such assignments or their equivalents are necessary in order to inform the accused of "the nature and cause of the accusation," within the meaning of the constitution, see King v. Perrott, 2 Maule & S. 379; State v. Learned, 47 Me. 426; Bryan v. State, 45 Ala. 86; Murphy v. State, 24 Miss. 590; State v. Duke, 42 Tex. 455; Gabrielsky v. State, 13 Tex. App. 428.

The record presents other important questions which have been discussed by counsel, but it is unnecessary to consider them, inasmuch as we have arrived at the conclusion that the indictment is fatally defective.

The cause is remanded, with directions to the court below to discharge the defendant absolutely, unless the case is resubmitted to the grand jury.