## STATE v. CARL B. SMITH.[1]

September 29, 1922.

No. 22,809.

**Question of guilt one for the jury.**

1. A careful examination of the evidence shows that it was sufficient to make the question of defendant's guilt a question for the jury.

**Indictment for subornation of perjury sufficient.**

2. An indictment for subornation of perjury which states that the false testimony was given at the trial of a designated civil action, in a designated court, at a designated time and place, sufficiently identifies the subject matter in respect to which the offense is claimed to have been committed.

[1]Reported in 190 N. W. 48.

### Allegation that perjurer was sworn sufficient.

3. A statement that the perjurer was induced to become a witness and to be duly sworn, and, on his examination as a witness duly sworn to testify the truth, gave the false testimony set forth, shows sufficiently that he was sworn.

### Indictment not invalid because some assignments of perjury are insufficient.

4. If any of the assignments of perjury are sufficient, the indictment is not invalid because others are insufficient.

### Indictment sufficient which complies with statutory requirements.

5. An indictment for perjury or subornation of perjury which complies with the requirements of the statutes is sufficient, although it may not comply with the requirements of the common law. State v. Nelson, 74 Minn. 409, insofar as it may be deemed an authority for a different rule is disapproved.

### Indictment sufficient under the statute.

6. The indictment in question is sufficient under the statute which provides that "no indictment shall be insufficient * * * by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

### Evidence admissible on question whether attorney knew testimony was false.

7. Where an attorney called the perjurer as a witness at three trials and he gave substantially the same false testimony at each of these trials, and the attorney is charged with subornation of perjury in procuring him to give such false testimony at the third trial, evidence as to the testimony given at the preceding trials was admissible for its bearing on the question whether the attorney knew the testimony to be false when it was given at the last trial.

### Evidence not inadmissible because tending to prove another crime.

8. That such evidence may have tended to prove the commission of another crime did not render it inadmissible.

### Statements of attorney's accomplice admissible, when.

9. Where the evidence tends to show that the attorney and another acted in concert in procuring the perjurer to give the false testimony, the statements of such other in furtherance of the joint purpose are admissible.

**Admissibility of telephone conversation within discretion of court.**

10. Admitting testimony as to an alleged conversation with defendant over the telephone was within the discretion of the trial court.

**Refusal of court to allow second attorney's argument to jury sustained.**

11. When the argument to the jury on behalf of defendant had been made and closed by one attorney for defendant, it was within the discretion of the court to refuse to permit a further argument by another attorney.

**Refusal of new trial correct.**

12. It was also within the discretion of the court to refuse a new trial on the ground of newly discovered evidence of an impeaching character.

**Charge to jury.**

13. The charge was full, clear, impartial and correct.

Defendant was indicted by the grand jury of Ramsey county charged with the crime of subornation of perjury, tried in the district court for that county before Catlin, J., and a jury and found guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*S. J. Levy, T. J. Newman, O. G. Wondra* and *L. C. Smith,* for appellant.

*Clifford L. Hilton,* Attorney General, and *R. D. O'Brien,* for respondent.

TAYLOR, C.

The defendant was convicted of the crime of subornation of perjury and appeals from an order denying a new trial.

The record is lengthy as the trial occupied two weeks, and it may conduce to brevity and clearness to mention first some of the undisputed facts in the order in which they occurred.

In the latter part of August, 1920, Marguerette Z. Craighead employed the Sheridan, Sweeney & Kerst Detective Agency to shadow her husband, A. W. Craighead, and an operator named Lawrence E. Tatro was detailed to perform this service.

Tatro found Craighead and William E. Stonebraker riding together in an automobile on the afternoon of Saturday, August 28, 1920, and trailed them to the St. Michael Apartments in the city of St. Paul, and so reported to Mrs. Craighead late that evening. On Sunday, August 29, 1920, Craighead, Stonebraker and Stonebraker's father, mother and aunt started for the lakes near Alexandria for an outing and drove in the Stonebraker automobile from St. Paul to Sauk Center, more than 100 miles distant, where they remained Sunday night. When Tatro undertook to resume his duties on Sunday, he was unable to find either Craighead or Stonebraker. He hired a taxicab and drove about the city and to White Bear Lake and back, but failed to find any trace of them. Notwithstanding this, he went to the office of the detective agency Monday morning and reported to Sheridan, the manager, that he had shadowed Craighead and Stonebraker throughout the entire day and evening of Sunday, and pretended to describe their movements and doings in detail. Among other things he stated that they drove in an automobile from the city of St. Paul to White Bear Lake, and that they met two women at a cottage at the lake whom they brought back to Craighead's apartment in the city of St. Paul, where the four remained for some hours. His entire story concerning Craighead and Stonebraker was a pure fabrication, for he had not seen either of them at any time on Sunday and knew nothing of their movements or doings. Sheridan notified Mrs. Craighead of Tatro's report, and she, accompanied by her sister, went to his office, where Tatro's story was repeated to her. At her instance Tatro accompanied her and her sister to the office of the assistant city attorney and repeated the story to him.

An action for divorce brought by Eleanor Stonebraker against William E. Stonebraker in which defendant Smith was attorney for the plaintiff came on for trial November 18, 1920. On information given by Mrs. Craighead, Smith subpoenaed Tatro as a witness. Tatro was not known to Mrs. Stonebraker, had not been employed by her, and apparently knew nothing of her or of her affairs until the supoena was served on him. He appeared in obedience to the subpoena, was sworn as a witness and told the same story on the

witness stand which he had related in August to Sheridan, Mrs. Craighead and the assistant city attorney. In the latter part of October, 1920, A. W. Craighead brought an action for divorce against his wife, Marguerette Z. Craighead, and Smith defended this action as her attorney. It came on for trial in the latter part of February, 1921, and Smith called Tatro as a witness who repeated in substance the story he had told in the Stonebraker case, but added the statement that after Craighead, Stonebraker and the two women had gone to Craighead's apartment, Craighead went away alone and returned an hour or so later.

On March 11, 1921, Tatro was indicted for perjury in his testimony given on November 18, 1920, at the trial of the Stonebraker case, and on March 14, 1921, Smith appeared as his attorney and entered a plea of not guilty, for him. He was placed in jail, but on the morning of March 15, 1921, was released on bail procured by Smith. A new trial had been granted in the Stonebraker case and it came on for trial the second time on March 15, 1921, the day on which Tatro was released on bail. At this trial Smith again called Tatro as a witness and he repeated in substance the story he had told at the Craighead trial. On April 23, 1921, Tatro was again indicted for the crime of perjury committed at this second trial of the Stonebraker case, and on April 25, 1921, entered a plea of guilty thereto, was sentenced to the state prison and is serving his term. On June 10, 1921, defendant Smith and Marguerette Z. Craighead were jointly indicted for subornation of perjury in procuring Tatro to give the perjured testimony at the second trial of the Stonebraker case. Smith was tried separately and the jury returned a verdict of guilty. The term defendant when used hereafter will refer to him.

Defendant contends that the verdict is not sustained by the evidence. That Tatro's entire testimony concerning the movements and doings of Stonebraker and Craighead on Sunday, August 20, 1920, was false was not controverted at the trial and stands admitted. The ultimate question of fact in dispute was whether the defendant procured Tatro to give this false testimony knowing it to be

false.   He stoutly insists that he did not know it to be false at the time it was given, and was assured by Tatro it was true.

At the trial Tatro was brought from the state prison and testified to the effect that on the morning of November 18, 1920, immediately after he was subpoenaed and before he had testified at the first trial of the Stonebraker case, he went to defendant's office, where he had an interview with defendant and Mrs. Craighead, in which he informed defendant that the story which he had told concerning Stonebraker and Craighead was not true, and objected to testifying to it for fear he would be arrested, and that defendant and Mrs. Craighead persuaded him to give the false testimony to aid Mrs. Stonebraker in securing the custody of her young child.   He also testified that at the Craighead trial he changed his former story by adding the statement that Craighead had left the apartment for a time Sunday afternoon, and that he did this at defendant's suggestion and because defendant told him a witness had been found who would testify that Craighead was at her house late Sunday afternoon and thereby corroborate his testimony that Craighead was in the city of St. Paul.   Tatro also testified to the effect that on March 15, 1921, he told defendant he was unwilling to testify at the second Stonebraker trial for fear he would be indicted again, but was induced to do so by defendant.   If the testimony given by Tatro at the trial of the present case be true, defendant induced him to give the perjured testimony charged in the present indictment with full knowledge that it was false.

The claim of the prosecution that defendant induced Tatro to give the perjured testimony at the second trial of the Stonebraker case knowing it to be false, does not rest wholly on the testimony of Tatro.

Defendant received his information concerning Tatro and Tatro's story from Mrs. Craighead.   Thomas P. Sheridan, manager of the detective agency, testified that when he reported Tatro's story to Mrs. Craighead, in his private office, on August 30, 1920, she pronounced it untrue because Tatro had been at her house for expense money at the time he said he was trailing Craighead and Stonebraker at White Bear Lake; that she objected to their bill for

services for that reason; that she asked him to call her attorney, the defendant, on the telephone; that he called defendant on the telephone, and, when a man who said he was Mr. Smith answered, turned the telephone over to her; and that she repeated Tatro's story over the telephone with the statement that it could not be true as he was at her house at the time he claimed to have been at White Bear. James J. Kerst and Henry W. Bergkeller, of the detective agency, testified that when she came out of Sheridan's office she stated that Tatro's story was absolutely false and that she would have to see her attorney, Mr. Smith, before paying their bill.

Tatro's wife testified that she accompanied her husband to defendant's office shortly before the Craighead trial and heard defendant ask him to "leave" Mr. Craighead out of the house for a while on Sunday afternoon, August 29, and she later stated that her husband replied: "I can't very well, I didn't let him out on the Stonebraker trial." She also testified that she was at defendant's office when her husband was released from jail the morning that the second trial of the Stonebraker case began, and that he objected to testifying at the second trial for fear he would be indicted again, and that defendant insisted that he must testify. Defendant tried the Stonebraker case for Mrs. Stonebraker at both trials and also tried the Craighead case for Mrs. Craighead. He knew that, at the first trial of the Stonebraker case, Craighead, Stonebraker and Stonebraker's father, mother and aunt, each testified that the five drove from St. Paul to Sauk Center in the Stonebraker automobile on Sunday, August 29, 1920, and stopped at the Lee Hotel in Sauk Center that night; that they were corroborated by the hotel register and the testimony of the hotel proprietor, and in part by the testimony of witnesses who saw the party in the automobile and talked with them in St. Paul as they were starting on their trip. If this testimony or any part of it was true, Tatro's was false. Before the second trial of the Stonebraker case Tatro was indicted for giving false testimony at the first trial and defendant appeared as his attorney and had a copy of the indictment and was fully advised as to the charge made.

Defendant emphatically denied that he knew or believed Tatro's testimony to be false at the time it was given. He stated that the first trial of the Stonebraker case was set for November 16, 1920, but owing to other business before the court was postponed until November 18; that he had subpoenaed Mrs. Craighead as a witness; that after the case had been called and postponed he talked with her concerning what she could testify to; that in this interview she informed him that she had had her husband shadowed by a detective in August and told him the report made by Tatro; that this was the first information he had received as to Tatro and Tatro's story; that relying on this information he had subpoenaed Tatro for the morning of November 18; that after the trial opened he was informed that Tatro was in the court room and called him as a witness, without having previously seen or talked with him; that, in all his conversation with Tatro thereafter, Tatro assured him that his testimony was true; and that Tatro, when arrested under the first indictment, declared that it was merely a "frame up" to scare him, and that they couldn't bluff him in that way. Mrs. Craighead testified to the same effect and corroborated defendant fully. Both testified that Mrs. Craighead employed defendant as her attorney in November, 1920, to defend the action for divorce brought by her husband, and that defendant had never been her attorney prior thereto. Mrs. Craighead and her sister testified that the defendant was not mentioned or referred to in any manner while they were at the office of the detective agency on August 30, 1920; that the truth of Tatro's story was not questioned; that Mrs. Craighead did not talk over the telephone to anyone while in that office; and that she did not dispute her bill, but paid it. In corroboration of this she presented the bill which was receipted as paid in full on that date.

Tatro's testimony that he had an interview with defendant and Mrs. Craighead in defendant's office before the opening of court on November 18, in which he objected to testifying for the reason that his story was not true and he might be arrested if he testified to it, is also contradicted in effect, by several witnesses who were in defendant's office that morning and who testified that defendant had

left the office and gone to the court room before Tatro arrived at the office.

The foregoing is by no means a complete outline of the evidence on either side, but will serve to indicate its character.

Defendant insists that Tatro was so thoroughly discredited that a verdict based mainly on his testimony ought not to stand. It is the province of the jury, not that of the court, to determine the weight and credit to be given to the testimony of the different witnesses, and we think the evidence taken as a whole was sufficient to make the question of defendant's guilt a question for the jury. State v. Renswick, 85 Minn. 19, 88 N. W. 22.

Defendant contends that the indictment fails to state a public offense and states the grounds for this contention as follows:

1st. Because it fails to state the substance of the controversy or matter in respect to which the offense was committed.

2nd. Because the indictment fails to state that the witness Tatro was duly sworn.

3rd. Because the indictment does not set forth "Assignments of perjury."

The indictment is too long to quote. It charges that C. B. Smith and Marguerette Z. Craighead procured and suborned Tatro to be sworn as a witness and to give the perjured testimony set forth in extenso. It further charges that, in consequence of such subornation, "the said Lawrence E. Tatro did on the 15th day of March, A. D. 1921, at the City of St. Paul in said county of Ramsey, then and there being, on his examination as a witness duly sworn to testify the truth on a trial of a civil action between Eleanor Stonebraker, plaintiff, and Wm. E. Stonebraker defendant, in the district court of the Second judicial district in and for Ramsey county, Minnesota, before the Honorable Charles C. Haupt, one of the Judges of said court, which court then and there had authority to administer said oath, then and there * * * wilfully, unlawfully, feloniously, wrongfully and knowingly testify that." The false testimony is here set forth a second time and is followed by the assignments of perjury. The indictment also contains averments to the effect that

the false testimony was material in the action in which it was given.

The General Statutes of 1913 provide, in section 9142, that an indictment shall be sufficient if the act charged as the offense is clearly and distinctly set forth, in ordinary and concise language, without repetition, and is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case; and in section 9143, that "no indictment shall be insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits;" and in section 9148, that, "in an indictment for perjury or subornation of perjury, it shall be sufficient to set forth the substance of the contorversy or matter in respect to which the offense was committed, and what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment need not set forth the pleadings, record or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed." The purpose of these statutes was to do away with the technicalities and unessential requirements of the common law so far as this could be done without prejudice to the substantial rights of the defendant upon the merits.

The statement designating the court and the cause in which the false testimony was given is matter of inducement, the purpose of which is to disclose a foundation for the commission of the offense and may be in general terms. 3 Bishop, New Cr. Proc. (2d ed.) §§904-905.

The averments in this indictment show that the offense was committed on the trial of the designated civil action in a designated court and at a designated time and place, and we think sufficiently disclose and identify the subject matter in respect to which it is alleged to have been committed. People v. Ah Bean, 77 Cal. 12,

18 Pac. 815; 124 Am. St. 657, note subd. III; State v. Stein, 48 Minn. 466, 51 N. W. 474.

The indictment states that defendant and Marguerette Z. Craighead induced Tatro "to become a witness and to be duly sworn to testify the truth," and further states that said Tatro "on his examination as a witness duly sworn to testify the truth" gave the false testimony therein set forth. If tested by the strict rules of the common law, perhaps it is not stated with sufficient directness that Tatro was sworn, but we deem the statement sufficient under the rules established by our statutes. State v. Scott, 78 Minn. 311, 81 N. W. 3; People v. Carpenter, 136 Cal. 391, 68 Pac. 1027; 3 Bishop, New Cr. Proc. (2d ed.) 1804, § 912.

The most serious objection urged against the indictment is in respect to the assignments of perjury. It is well settled that if any of the assignments are good the indictment will be sustained. Commonwealth v. McLaughlin, 122 Mass. 449; DeBernie v. State, 19 Ala. 23; Dilcher v. State, 39 Oh. St. 130; State v. Smith, 63 Vt. 201, 22 Atl. 604; People v. Rodley, 131 Cal. 240, 63 Pac. 351; State v. Eaid, 55 Wash. 302, 104 Pac. 275, 33 L. R. A. (N. S.) 946.

The indictment charges that said Lawrence E. Tatro did "wilfully, unlawfully, feloniously, wrongfully and knowingly testify falsely that:" And then set forth in full Tatro's testimony as to what occurred on Sunday, August 29, 1920. This is followed by the assignments of perjury. They begin with the phrase: "Whereas in truth and in fact the said Lawrence E. Tatro did not," and then repeat seriatim, in substance, the testimony previously set forth, connecting the several statements therein by the disjunctive "or."

This is not a case of separating the false from the true. The entire story concerning Craighead and Stonebraker was false, and it is obvious that the assignments of perjury were intended to negative the truth of the entire story. It must be admitted, however, that some of them are open to the charge that they are negatives pregnant; and also that some of them are put in such form that the grammatical connection between the statement made and the negative placed at the beginning of the assignments is faulty, although this negation is plainly intended to apply to all of them. Notwith-

standing these defects in form, we are satisfied that defendant must necessarily have understood from the indictment that the statement that Craighead and Stonebraker took two women from White Bear Lake to Craighead's apartment in St. Paul, and the statement that the four remained in that apartment for some hours were claimed to be false. Defendant made no claim at the trial that he was not sufficiently advised of the particular charge he was called upon to meet, nor that he needed any other or more specific information to enable him to make his defense. In fact, he first demurred to the indictment and then withdrew the demurrer and entered a plea of not guilty, and this might be treated as a waiver of the claim that the charge was not sufficiently specific. People v. Rodley, 131 Cal. 240, 63 Pac. 351.

If the strict rules of the common law, which are recapitulated in State v. Nelson, 74 Minn. 409, 77 N. W. 223, were to be applied, we are not prepared to say that this indictment would stand the test, but these rules have been modified by our statutes, and we think the objections here urged are within the purview of the statutory provision that "no indictment shall be insufficient   *   *   *   by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." State v. Sharp, 121 Minn. 381, 141 N. W. 526. We think it clear that defendant's substantial rights were prejudiced in no way by the imperfections in the indictment.

We are unable to assent to the proposition that the constitutional requirement that the accused "be informed of the nature and cause of the accusation" against him operates to continue in force the technical requirements of the common law in respect to assignments of perjury.

It is generally held that an indictment for perjury or subornation of perjury which complies with the requirements of the statutes is valid and sufficient, although it may not comply with the requirements of the common law. State v. Ah Lee, 18 Ore. 540, 23 Pac. 424; State v. Gates, 107 N. C. 832, 12 S. E. 319; State v. Camley, 67 Vt. 322, 31 Atl. 840; State v. Corson, 59 Me. 137, 139; People v. Rodley, 131 Cal. 240, 63 Pac. 351; People v. Clements, 107 N. Y. 205,

13 N. E. 782; Hicks v. State, 86 Ala. 30, 5 South. 425; State v. Walls, 54 Ind. 407; State v. Jolly, 73 Miss. 42, 18 South. 541; United States v. Howard (D. C.) 132 Fed. 325; Markham v. United States, 160 U. S. 319, 16 Sup. Ct. 288, 40 L. ed. 441; State v. Thomas, 19 Minn. 418 (484).

And it is further held that such an indictment does not infringe the constitutional rights of the accused if it informs him of the charge against him with sufficient certainty to enable him to prepare his defense. See authorities above cited. We think that this is the rule that should be adopted and followed, and that State v. Nelson, 74 Minn. 409, 77 N. W. 223, insofar as it might be deemed an authority for a more technical rule, is not in consonance with modern laws or the trend of authority.

Many of defendant's assignments of error are directed to rulings admitting or excluding testimony. It is conceded that. Tatro gave the perjured testimony charged and that it was false, consequently there is no need to consider the alleged errors in rulings as to evidence which only tended to prove or disprove one or the other of these facts. It is also admitted that defendant as attorney for Mrs. Stonebraker called Tatro as a witness and had him give the testimony in question under oath at the trial. Consequently we may properly confine our examination to the rulings as to evidence bearing on the question whether defendant, when he called Tatro as a witness at the second trial of the Stonebraker case, knew that the testimony to be given by Tatro was false.

Defendant contends that it was error to admit proof of the testimony given by Tatro at the first trial of the Stonebraker case and at the trial of the Craighead case. After making a number of objections to portions of this testimony, defendant withdrew them, saying that the three trials had been so intermingled in Tatro's testimony that "we have decided all this should go to the jury and we will withdraw any objections so that the county attorney may proceed as he sees fit." He thereby expressly consented to the admission of such testimony. But this aside, the evidence was properly admitted. Defendant, in his capacity as attorney, conducted one side of all three of these trials, and had Tatro tell his

story as a witness in each of them. The evidence relating to Tatro's testimony at the two prior trials was competent and relevant for its bearing on the question whether defendant knew the story to be false when he called Tatro as a witness at the third trial. While this evidence was not admissible, if offered merely for the purpose of proving another crime, the fact that it may have tended to prove another crime did not render it inadmissible for other purposes. Dunnell, Minn. Dig. and Supps. § 2459.

Tatro was permitted to testify that at the close of the interview between himself, the defendant and Mrs. Craighead in defendant's private office, on the morning of November 18, 1920, in which he claimed that they persuaded him to consent to tell his false story as a witness at the trial; and after he and Mrs. Craighead had gone from the private office into the main office, she said to him: "Now Mr. Tatro, don't be afraid. We will stand right by you." The admission of this testimony is claimed to be error, for the reason that the statement was not made in defendant's presence. Testimony as to statements made by Mrs. Craighead having reference to one or the other of the later trials is also assigned as error for the same reason. We think that the evidence tending to show that defendant and Mrs. Craighead were acting in concert in furtherance of a common purpose to induce Tatro to give the false testimony, was sufficient to make this evidence admissible under the rule applied in State v. Dunn, 140 Minn. 308, 168 N. W. 2; State v. Lyons, 144 Minn. 348, 175 N. W. 689, and other cases.

Defendant also challenges the ruling admitting the testimony of the witness Sheridan as to what Mrs. Craighead told defendant over the telephone. We think the court did not exceed its discretion in admitting this testimony. Its weight was for the jury to determine in the light of all the evidence.

At the close of all the evidence, there seems to have been some sort of an understanding, not shown by the record, that both arguments to the jury were to be made that afternoon, and that the time was to be divided between the attorneys equally. The prosecuting attorney made the argument for the state occupying, it is said, an hour and thirty-five minutes. One of the attorneys for defendant

then made the argument in his behalf, occupying, it is said, an hour and ten minutes. He closed at about the usual hour of adjournment. On the next morning another attorney for defendant asked to be allowed to make a further argument for defendant, on the ground that the prosecution had taken more than its share of the time the day before. The court denied this request, on the ground that defendant's counsel had closed his argument of his own volition before the expiration of the time allotted to him, and on the further ground that he declined to allow two attorneys to address the jury on the same side. We think the court did not exceed its discretion in making this ruling.

We have carefully examined all the assignments of error, with the result that we find no other rulings which require, or would justify, extending this opinion by special comment thereon.

Defendant takes exception to portions of the charge, but we find nothing therein of which he has any cause to complain. The charge that the testimony of Tatro at the second trial of the Stonebraker case was material in that case was correct. The testimony was clearly material, and the question was for the court to determine as a matter of law. 21 Standard Enc. Proc. 331, and numerous cases there cited.

The charge to the effect that the testimony of the perjurer was not sufficient to prove the commission of the perjury unless corroborated by other evidence, but that his testimony, uncorroborated, was sufficient to prove the subornation, if it convinced the jury, was also correct. State v. Renswick, 85 Minn. 19, 88 N. W. 22. It was also proper to admonish the jury that the charge on trial covered only the testimony given by Tatro at the second trial of the Stonebraker case, and that the evidence concerning his testimony at other trials was received only for the light it threw on that charge, and not for the purpose of proving that other crimes had been committed.

Defendant also insists that the court erred in refusing to grant a new trial on the ground of newly discovered evidence. This evidence consists of affidavits as to statements made by Tatro after his commitment to the state prison, and affidavits tending to contradict some of his testimony at the trial. Tatro made an opposing

affidavit in substance denying the statements attributed to him and asserting that his testimony at the trial was true. The court did not abuse its discretion in refusing to grant a new trial on this ground.

We have reached the conclusion that the order appealed from must be, and it therefore is, affirmed.