## STATE v. CARL B. SMITH AND ANOTHER.
## MARGUERETTE Z. CRAIGHEAD, APPELLANT.[1]

June 13, 1924.

No. 23,946.

**New trial granted because of doubtful character of testimony.**
>    Record examined and *held* that, upon a conviction for the crime of subornation of perjury, a new trial should be granted in the furtherance of justice because of the doubtful character of the testimony and the insufficiency of the evidence.

After the conviction of Carl B. Smith, Marguerette Z. Craighead, jointly indicted with him by the grand jury of Ramsey county for subornation of perjury, was tried in the district court for that county before Hanft, J., and a jury which found her guilty as charged in the indictment. From an order denying her motion for a new trial, defendant appealed. Reversed and new trial granted.

*John P. Kyle*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy General, *Harry H. Peterson*, County Attorney, and *M. F. Kinkead*, Assistant County Attorney, for respondent.

WILSON, C. J.

Marguerette Z. Craighead, who will be herein referred to as the defendant, was jointly indicted with Carl B. Smith, accused of the crime of subornation of perjury. Smith was tried and convicted, and his conviction affirmed in this court. State v. Smith, 153 Minn. 167, 190 N. W. 48. The defendant was tried upon the same indictment and convicted, and now appeals to this court from the order of the trial court denying her motion for a new trial.

Defendant is the wife of Albert W. Craighead, and a divorce suit is pending between them, which was tried and submitted in February 1921, but has not yet been decided. From 1919 to 1922 the defendant has been more or less ill, necessitating hospital treatment,

[1]Reported in 199 N. W. 427.

and for a time she was in Mounds Park Sanatorium. On June 29, 1920, upon leaving the city hospital, her husband, who was then living at 786 Grand avenue, St. Paul, refused to permit her to return to the family home and she went to live with her sister Jennie Mulligan at 162 Virginia avenue, St. Paul, where she has since lived.

In August, 1920, the defendant believed that her husband was guilty of misconduct, and, for the purpose of ascertaining whether or not such reports were true and to determine if her suspicions were well founded, she went to the Sheridan, Sweeney & Kerst Detective Agency and employed them to cause an operator to shadow her husband. This agency detailed one Lawrence E. Tatro for service on this case. She paid to this agency $50 for expenses incident to the employment

William E. Stonebraker, whose wife was Eleanor Stonebraker, is a son of J. E. Stonebraker. On Saturday afternoon, August 28, 1920, Tatro found Craighead and William E. Stonebraker and trailed them to the St. Michael Apartments in St. Paul and so reported to the defendant that evening. On Sunday morning, August 29, 1920, Craighead, Stonebraker and his father, mother and aunt called to see Mr. and Mrs. J. F. George on Summit avenue, St. Paul, and then started on a trip to the northern part of the state and reached Sauk Center about 100 miles from St. Paul on that day and remained there Sunday night, stopping at a hotel operated by Mrs. Jennie Lee.

Sunday morning detective Tatro undertook to resume his duties, but was unable to find either Craighead or Stonebraker. He hired a taxicab and drove about the city of St. Paul, went to White Bear Lake and toward the latter part of the day indulged freely in the use of intoxicating liquor. He failed, on this Sunday, to find any trace of either of these men. Notwithstanding this failure on his part, his imagination easily saw what he desired and he went to the office of his employers on Monday morning and reported that he had shadowed Craighead and Stonebraker throughout the entire day and evening of Sunday, and made a detailed report as to their movements during that time. He reported that these men drove

an automobile from St. Paul to White Bear Lake and there met and spent some time with two women, at a cottage, whom they brought back to Craighead's apartment in the city of St. Paul where the four remained for several hours. He made a detailed report as to street movements and how he had followed this car to various points in St. Paul and to Minneapolis and back. It later developed that his entire story concerning Craighead and Stonebraker was the rankest kind of falsehood and that he had seen neither of these men during that entire day, and that they both were many miles away on their trip toward Sauk Centre. The detective agency made this false report of Tatro to the defendant and at her request Tatro accompanied her and her sister to the office of the city attorney and repeated the false report to him.

On Sunday morning, August 29, 1920, Tatro called on the defendant for expense money and was given $20. Sunday evening he called for and was given more money.

An action for divorce was brought by Eleanor Stonebraker against her husband, in which Carl B. Smith was attorney for the plaintiff, and this case was tried November 18, 1920. Defendant was subpoened, at the request of Eleanor Stonebraker, for the purpose of testifying to some marks which it is claimed she had seen on Mrs. Stonebraker's arms and which Mrs. Stonebraker claimed had been made by her husband. When the defendant was questioned by Smith, attorney for Mrs. Stonebraker, she claims that she disclosed the story that Tatro had told her as to the doings of Stonebraker and Craighead on August 29. Smith then subpoenaed Tatro and he went upon the witness stand in the Stonebraker divorce suit and testified in support of his fabricated report of the doings of these two men on August 29. He then told substantially the same story that he told to the city attorney in the presence of defendant.

Defendant claims that, when she came in contact with attorney Smith in the Stonebraker suit, she told him of a divorce suit which her husband had brought against her, and that she then employed Smith to defend her in her own divorce suit, and she claims that there was the inception of her business relations with Smith. The Craighead action was brought in October, 1920, and was tried in

February, 1921, and Tatro was called as a witness in that action and repeated, in substance, the story he had told in the Stonebraker case, with a slight addition.

On March 11, 1921, the grand jury of Ramsey county indicted Tatro, accusing him of perjury committed on the Stonebraker trial on November 18, 1920. Tatro was brought into court and he applied to Smith to get the defendant to go on his bond. The defendant responded by calling at the office, but did not go on the bond. On the following day a bond was furnished through the instrumentality of Smith. In the meantime a new trial had been granted in the Stonebraker case and it again came on for trial on March 15, 1921. Tatro, having been released on bail on the morning of March 15, went on the stand in the afternoon of that day, in the second trial of the Stonebraker case, and again repeated in substance the story he had told in the Craighead trial. On April 23, 1921, Tatro was again indicted for the crime of perjury committed at the second trial of the Stonebraker case, and he then confessed, and on April 25, 1921, he entered a plea of guilty thereto, and was sentenced to state prison and so far as the record discloses is still there.

On June 10, 1921, defendant and Smith were jointly indicted for subornation of perjury in procuring Tatro to give the perjured testimony at the second trial of the Stonebraker case.

Section 8559, G. S. 1913, in substance provides that every person who shall swear that he will truthfully testify in an action in which an oath is required by law and who in such action shall wilfully and knowingly testify falsely in any material matter or shall state in his testimony any material matter to be true which he knows to be false, shall be guilty of perjury. "Subornation of perjury shall mean the wilful procuring or inducing another to commit perjury." Section 8522, G. S. 1913.

The indictment in this case has heretofore been sustained in State v. Smith, 153 Minn. 167, 190 N. W. 48.

Defendant now attacks the sufficiency of the evidence to sustain the conviction. There can be no doubt but that Tatro has added perjury to his sins. The claim, however, is that the evidence does not establish, beyond a reasonable doubt, that defendant knew that

the testimony which Tatro gave, which is referred to in the indictment, was false, and that it does not so show that defendant wilfully procured or induced him to give said testimony. We are not surprised that defendant claims that Tatro does not deserve credence.

Defendant had no interest in the outcome of the case wherein Tatro gave this perjured testimony. The outcome in this case could have little, if any, bearing upon any litigation in which she was interested. The evidence fails to disclose any motive for having Tatro testify falsely in the Stonebraker divorce suit. There is no doubt but that Tatro did testify falsely. He did this in many particulars. But does the evidence show or produce facts from which legal inferences may be drawn to the effect that defendant wilfully procured or induced Tatro to so testify? Smith, as the lawyer and moving influence in putting this shameful witness on the stand in the Stonebraker trial and other cases, had an object in view. Appellant could not have a common object with Smith. Where is the evidence in this case that is persuasive that appellant was one of the moving parties and in fact did procure or induce the commission of this perjury? The testimony of Tatro shows that he originated his false story. He put it in circulation. She did not manufacture it. The state claims that appellant then procured and induced this falsehood to be repeated in a lawsuit in which she had no interest and with which she had no connection. Tatro says he told her his story was false. This she denies.

Tatro testified that in the first Stonebraker trial he told Smith that he would testify but that he added: "I'll give that testimony (referring to his story) but, if it is perjury, if it is going to be perjury in a way that will send me to prison; I am not going to take any chances on it." He says appellant heard this and that later she said to him: "Don't you be afraid, Mr. Smith is a good man and you can't get in trouble over this, and no matter what trouble you get into, Tatro, we will stand back of you; we have got the money to do it." This does not relate to the trial in which the perjury occurred that is made the subject of this charge of subornation of perjury. He does say that prior to the last trial she told him that if anything happened she would stand back of

him. In fact if this language proves anything, it could be no more than to tend to show knowledge of the false testimony. Appellant denies that she used this language. This language is entitled to but little consideration as substantial proof of inducement or procurement on the part of appellant. This prosecution must necessarily rest very largely upon the testimony of Tatro. He is corroborated only by two other detectives and this is in reference to the question as to whether or not appellant believed the fabricated story of Tatro. They offer no support to the claim that appellant procured or induced the giving of the false testimony. We have searched the record with care in an effort to find some substantial evidence to justify the verdict of the jury in finding her guilty of procuring or inducing the perjury. The record fails to disclose any evidence, aside from that which we have stated, which by express words or by necessary implication could possibly point to defendant as such procuring or inducing cause. The facts are not to be inferred because the facts are consistent with her guilt. In order to convict her the facts must be inconsistent with her innocence. Wilfully means deliberately, and intentionally and with design and purpose. There is not a single act or word in this record which can be construed into a request or a direction for Tatro to testify to the falsehood leading to this accusation. The appellant was a woman in ill health, nervous and depressed by domestic unhappiness. She sought to shadow her husband to ascertain if reports concerning him were true, but not for the purpose of obtaining evidence to use in divorce proceedings. The inherent deficiency of legal proof is persuasive that appellant should be given a new trial. The state is asking for a conviction almost entirely upon the testimony of a detective who was unfaithful to his trust and a self-confessed perjurer. His testimony at best is dangerous. It is contradictory. It is intrinsically wicked. Tatro has lied so much that it seems unsafe to vouch for his credibility in any respect. His testimony is inherently dangerous, and, while the credibility of a witness is for the jury, the unsatisfactory character of the testimony in this case, and the absence of sufficient evidence to sustain the burden which the law imposes upon the state in reference to the element

of procuring or inducing Tatro to commit perjury, leads us to the conclusion that, in furtherance of substantial justice, this conviction should not stand and that a new trial should be granted.

DIBELL, J. (dissenting.)

I dissent. The testimony of Tatro is corroborated by other testimony and to some extent is supported by circumstances. The evidence of guilt is legally sufficient. The testimony of the defendant may not have appealed strongly to the jury. She was intensely interested and was active in both Stonebraker trials. To her mind her alienation of affections case against the elder Stonebraker was in some way to gain by a decision favorable to Mrs. Stonebraker. At all events she was anxious for such result. There is evidence, it seems to me, that she sought to have Tatro give his false testimony in the second trial after he had been indicted for perjury in the first, and was helping Smith in the use of it. It may be that she was under a mental and physical strain because of her troubles as the prevailing opinion says, and that was proper for consideration in measuring her acts. It was for the jury to say whether it would believe Tatro, confessedly a perjurer in both Stonebraker cases and a convicted perjurer for his testimony in the last one. It approached the question under proper cautionary instructions. It found facts constituting guilt, the trial court is satisfied with the verdict, and I do not favor interfering with it.

STONE, J. (dissenting.)

I concur with Mr. Justice Dibell.