**TRADERS & GENERAL INS. CO. v. KEAHEY et al.**

No. 4909.

Court of Civil Appeals of Texas. Amarillo.

June 6, 1938.

Rehearing Denied Sept. 12, 1938.

Simpson, Dorenfield & Fullingim, of Amarillo, and Dan P. Johnston and Lightfoot, Robertson & Gano, all of Fort Worth, for appellant.

L. B. Godwin and Works & Bassett, all of Amarillo, for appellees.

STOKES, Justice.

The record in this case discloses that on and before the 5th of December, 1932, D. Keahey was employed in highway construction work in Wheeler County by Stuckey Construction Company. His duties consisted, in part, of flooding or wetting the road-bed ahead of the concrete mixer, and on the day mentioned he, with several other employees, was dragging a large water hose which became entangled with another hose and, in order to release it, he made a lunge or jerk upon it, the reaction from which caused him to slip and fall, striking his back and hip against the ground, causing bruises and injury to his back. Appellant, Traders & General Insurance Company, was the insurer of the Construction Company under the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., and in due time Mr. Keahey filed with the Industrial Accident Board his claim for compensation for the injuries, in settlement of which appellant paid him $500.

On March 21, 1933, some three and a half months after the injury, Mr. Keahey developed appendicitis, which necessitated an operation for the removal of his appendix, and on July 3, 1935, another operation was performed to relieve a condition of intestinal strangulation which resulted from adhesions which developed from the operation for appendicitis, and he died the next day after the last operation. Appellees, Mrs. D. Keahey, his surviving wife, and Betty Joyce and Joycie Fern Keahey, his surviving minor children, filed with the Industrial Accident Board their claim under the provisions of the Workman's Compensation Act for compensation for the death of the husband and father, and the

action of the Industrial Accident Board being unsatisfactory, they appealed from it and filed this suit in the District Court of Wheeler County. The case was tried upon appellees' second amended original petition on the 17th of May, 1937, and submitted to a jury upon special issues in answer to which the jury found, in substance, that the deceased sustained personal injuries on December 5, 1932, which were the result of an accident; that he was at the time an employee of the Construction Company and that the injuries were sustained in the course of his employment. The jury further found that the injuries sustained by Mr. Keahey on the 5th of December, 1932, were a producing cause of his death on July 4, 1935, and that his average daily wage was $3 per day. They further found that the death of the deceased was not caused solely by infections or diseases that did not result from the injuries sustained by him on the 5th of December, 1932, and that his death was not caused solely by appendicitis, nor caused solely by injuries received by him in an automobile accident in June, 1935, nor caused solely by the operation for obstruction of the intestines on July 3, 1935. They found in favor of a lump sum settlement.

The trial court entered judgment in favor of appellees against appellant for the sum of $3,383.36, but credited that amount with the $500 that had been paid to Mr. Keahey under his former claim for compensation, leaving a net judgment of $2,-883.36, from which appellant has prosecuted this appeal.

The controlling question in the case is raised by appellant's first, second and third propositions in which it assigns error of the trial court in refusing to grant its motion for an instructed verdict. It is the contention of appellees that the deceased sustained personal injuries to his back, nerves, muscles and tendons on December 5, 1932, on account of which he was compelled to undergo an operation for appendicitis March 21, 1933; that such original injuries, together with the operation for appendicitis, produced other complications or infections which resulted in the formation of intestinal adhesions which made it necessary that an additional operation be performed on July 3, 1935, from which he died the next day. Appellant contends that appellees failed to discharge the burden of proof which rested upon them to establish the fundamental basis of their claim for compensation, viz., that the deceased died as a result of damage or harm to the physical structure of his body or from such diseases or infections as naturally resulted therefrom. The question is, therefore, whether or not appellees have proved a case by testimony which is sufficiently accurate, certain and dependable to form the basis of a judgment in their favor against appellant. Section 5 of Art. 8309, Revised Civil Statutes, 1925, provides that "The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

From the provisions of the statute it is obvious that claimants under the Workmen's Compensation Act are not entitled to recover of their insurers for injury or death resulting from intervening, independent agencies. In order to recover, the claimant must establish, by competent evidence, the fact that the injury or death resulted from damage or harm to the physical structure of the body or from diseases or infections that naturally resulted from such injury. The jury in this case was asked to find whether or not the injuries sustained by the deceased employee on the 5th of December, 1932, were a producing cause of his death on July 4, 1935, to which they answered in the affirmative. It was held by the Commission of Appeals in the case of Texas Employers' Ins. Ass'n v. Burnett, 105 S.W.2d 200, that where an employee who had sustained injuries in the course of his employment for which he was entitled to compensation afterwards developed typhoid fever, from which he died, that unless the typhoid fever could be traced to the injury and developed as a result of the injury, no recovery could be had for the death. In that case it was suggested that the injury received by the employee had the effect of reducing his resistance to disease and, therefor, in that manner, contributed in some degree to his death; but the court held that, unless the disease resulted from the injury, the claimants were not entitled to recover because the disease did not ensue from the injury inflicted upon the body of the deceased and could not be said to result from damage or harm to the physical structure of the body as provided by the statute. In other words, if an employee receives an injury and by reason thereof his power to resist diseases and infections coming from other sources is reduced, and he becomes a prey to such diseases and infections and dies as a result

of their attack, compensation for his death cannot be awarded because the death did not ensue by reason of the injury inflicted on the body of the deceased and the disease or infection was not such a disease or infection as naturally resulted from the injury. In that kind of a case the injury was, in a sense, a producing cause of the death because his reduced resisting power put him in a condition in which he was less able to resist or overcome the onslaught of the disease, or independent agency, than he would have been if he had not received the injury. It is, therefore, not accurate to say that compensation is provided by the statute for all deaths of which a compensable injury is a producing cause. Texas Employers' Ins. Ass'n v. Burnett, Tex.Com. App., 105 S.W.2d 200; Travelers' Ins. Co. v. Smith, Tex.Civ.App., 266 S.W. 574; Travelers' Ins. Co. v. Peters, Tex.Com. App., 14 S.W.2d 1007; Texas Employers' Ins. Ass'n v. Jackson, Tex.Com.App., 265 S.W. 1027; Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S.W. 116.

■ In an effort to discharge the burden resting upon them to prove that the intestinal adhesions and surgical operation performed upon the deceased therefor on the 3rd of July, 1935, were the ultimate result of the injury received by him on December 5, 1932, appellees introduced as a witness Dr. York, who had treated the deceased employee in March, 1935, shortly before the last operation, and their asserted right to recover is based upon his testimony. Appellees' counsel presented to Dr. York a hypothetical question in which they detailed the original injury, the ensuing treatment and the physical condition of the deceased from the time of the injury until the operation for appendicitis three and a half months later, and his physical condition and symptoms from that time until the operation for intestinal adhesions on July 3, 1935, and then asked him whether or not, in his opinion, as a physician and surgeon, the injuries of December 5, 1932, caused the appendicitis; to which the witness answered: "Well, I think it contributed to it." Upon objection of counsel for appellant this answer of the witness was stricken and the jury instructed not to consider it; whereupon the witness answered: "In my opinion I think it did, but then that covers too much; I couldn't just qualify on that." The trial judge then informed the witness there was no qualification involved and stated to him that the question was whether or not, in his opinion, the injury caused the appendicitis. The witness then answered: "I believe it did; that is my opinion."

He was then asked by counsel for appellees whether or not, in his opinion, the injury was the original cause of the death of deceased, which he answered in the affirmative and stated that he could express himself as to why he thought so. He was not given an opportunity to so express himself, but was then asked to state whether or not, in his opinion, the injury of December 5, 1932, "was a contributing cause of his death," which he also answered in the affirmative. On cross-examination the witness stated that he could not say just exactly that the injury was the sole cause, but it was a highly contributing cause and his theory was that the inflammation which resulted from the injury, by a process of contiguity, progressed through the muscles, organs and tissues of the body from the locus of the injuries through the psoas and other muscles in the lumbar region and through the peritoneum and finally reached and involved the appendix which made necessary the operation for appendicitis on March 21, 1933. Dr. York did not perform the operation, and in fact had never seen the deceased or made any examination of him until in March, 1935, which was two years after the operation for appendicitis was performed. The vital question just here is whether or not there was present in the region of the appendix and in the appendix itself, when he was operated upon on March 21, 1933, inflammation or infection which had originated at the locus of the injuries to his back three and a half months prior thereto and that such inflammation or infection caused the appendicitis which, in turn, caused the adhesions and made necessary the subsequent operation of July 3, 1935, from which he died. The appendectomy was performed by Dr. Morris at Canadian, assisted by Mrs. Peterson, a registered nurse. These parties were produced by appellant as witnesses, and Dr. Morris testified that Mr. Keahey was brought to the hospital complaining of pain of several days duration; that his examination showed a rigid condition of the abdomen and a great deal of tenderness over the appendiceal region; that the blood count showed an increase of white cells, indicating inflammation, all of which resulted in his diagnosis of appendicitis. He said there were no black, blue or bruised places on the patient's back nor any discolored places anywhere; that he strip-

ped the patient, looked him over and examined him, and if there had been any such places he would have seen them because an examination for appendicitis involves an examination of the body in such manner as that they probably would have been noticed. He said he diagnosed the case as acute appendicitis and in the operation which he performed he found the appendix was red and swollen and becoming gangrenous in spots. He said he examined the appendix after it was removed and also, through the incision, he examined the region surrounding the appendix and that he saw no inflammation of the surrounding tissues or bowels or any other part of the abdominal cavity except the appendix itself. He said the appendix is always a fruitful source of inflammation in every person and described minutely the conditions which ordinarily cause appendicitis. He said that in his experience of eighteen years he had never known or heard of a case of appendicitis resulting from a bruised back or hip and that he had never read any medical authority which reported such a case. He said that if the appendix had been affected by inflammation proceeding from the injuries in the patient's back, the organs and tissues in the region of the appendix and between the appendix and the locus of the injuries would have shown an inflamed or infected condition, but that he found no evidence of any inflammation or infection of any other organs or tissues except the appendix. He said that, if such inflammation or infection could be so communicated, it would have to go through the heavy lumbar muscles which form the back side of the body wall and then through the psoas muscle, both of which are very thick, and then it would have to proceed through the bony pelvis or ilium and the back bone and then the kidneys and other tissues in that region, and that inflammation from a bruise could not proceed through such tissues, muscles and portions of the body so as to cause appendicitis. He said if such a thing were possible, the injury would have to be so tremendous that the patient would be dead before the results could be transmitted through such heavy structures as intervene between the back and the appendix and that, in his opinion, there could be no possible connection between a back injury and the development of appendicitis, especially after so long an interval. His testimony was to the effect that Mr. Keahey was suffering from an ordinary case of appendicitis and that, as a matter of fact, the conditions which, in the opinion of Dr. York, existed in the region of the appendix and brought about its diseased condition and made the operation necessary, did not exist.

In addition to the testimony of Dr. Morris, Mrs. Peterson qualified as an expert in such matters and fully corroborated him in respect to the matters and conditions just mentioned. She testified that she assisted Dr. Morris in performing the operation for appendicitis and that it was an ordinary case of appendicitis from which the patient had a normal recovery and left the hospital within a few days after the operation was performed.

The findings of the jury to the effect that the appendicitis resulted from the original injury was based upon the testimony and opinion of Dr. York and was evidently made in complete disregard of the testimony of Dr. Morris and Mrs. Peterson who performed the operation two years before Dr. York examined the patient. Dr. York's testimony in this respect was uncertain, to say the least. He first said that he thought the injury contributed to the diseased condition of the appendix. He then said that in his opinion the injury caused the appendicitis but said he "couldn't just qualify on that." After the court explained to him that his qualifications in that respect were not involved, he expressed it as his belief that the injury caused the appendicitis and that, in his opinion, it did cause it. Later he said he thought it was the cause of it but he could express himself as to why he thought so. He was not requested, nor given an opportunity to so express himself. After these expressions of opinion and belief and these changes from one theory to another, he finally stated that in his opinion the injury was a contributing cause of the employee's death. Under the rules of evidence it has been found necessary to establish exceptions to the general rule which precludes witnesses giving their conclusions and opinions regarding facts in issue and those exceptions are based upon the necessity to the due administration of justice. It is said that a necessity of this kind exists when the facts themselves are not accessible by evidence, being either future possibilities or mere contingencies or else actual facts not within positive knowledge. Metropolitan Life Ins. Co. v. Wagner, 50 Tex.Civ. App. 233, 109 S.W. 1120. The rule is,

however, that opinion evidence will not be considered as sufficient basis for judicial determination unless it is relevant and directly applicable to the facts of the case. The question here was whether or not the appendicitis was caused directly by the injury of December 5, 1932, through a process of contiguity of inflammation proceeding from it, or that it was a disease or infection that naturally resulted from such injury. The only method by which appellees sought to prove the affirmative of this question was the opinion of Dr. York and, as shown above, his testimony was uncertain in that respect. It is impossible to say whether, in his opinion, the appendicitis was caused by the injury or whether the injury merely in some manner contributed to it, and, if it did, then an uncertainty arises as to whether it was an original contributing cause and, if so, what the relation would be between the original contributing cause proceeding from the injuries and an intervening contributing cause. There are conditions in which courts and juries are allowed under the law to base their judgments upon the opinions of expert witnesses. Opinions are, however, only notions or convictions founded upon probable evidence and consist of beliefs which are stronger than impressions but of less strength than positive knowledge. In re Clark, 126 Mo.App. 391, 103 S.W. 1105. They are admissible when the facts themselves are not available or, when they are available, to explain various phenomena revealed by them. An examination of the cases in regard to these rules of evidence will show that they converge into the conclusion that it is the duty of the court to instruct a verdict, though there be slight testimony, if the probative force of that testimony be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established. It is held that such testimony, in legal contemplation, falls short of being any evidence as contemplated by the rule which forbids the reversal of a jury verdict when there is any evidence to support it. To say nothing of the common knowledge and experience which all men have in relation to the nature, extent and reaction of the human body to injuries, which knowledge and experience are at variance with a conclusion such as that which was reached by Dr. York in this case, the uncertainty exhibited by him in expressing his conclusions destroys their force and, we think, renders his testimony so weak and uncertain that

it merely raised a surmise or suspicion that the attack of appendicitis was the result of the injuries to which Mr. Keahey was subjected three and a half months prior to the attack of appendicitis and that in legal contemplation it fell short of that degree of evidence which warranted the court in submitting the case to the jury.

 The most that can be said of Dr. York's testimony is that it raised a suspicion that the original injury may have caused the appendicitis. If there was any connection between the original injury and the appendicitis there must have been present, in the region of the appendix at the time the operation was performed, inflammation or infection that had its origin in the injury to the employee's back. Dr. York was of the opinion that such inflammation was present. On the other hand, Dr. Morris and Mrs. Peterson who performed the operation examined the appendix and abdominal cavity through the incision made in performing the operation and they both testified positively there was no such inflammation or infection present in that region. We may disregard the opinions of Dr. Morris and Mrs. Peterson in reference to the possibility of communication of such infection and inflammation by contiguity and consider only their original positive testimony upon the actual facts and conditions existing in the appendiceal region and in the abdomen at the time the operation was performed, and even when thus restricted, their testimony so overwhelmingly destroys the theories and opinions of Dr. York as to leave no room for doubt that the appendiceal region at the time the operation for appendicitis was performed was, as a matter of fact, free from any such infection or inflammation. As we view the record, there is no room for fair and reasonable minds to differ in this respect. It is true that under our system the jury were the judges of the credibility of the witnesses but, even so, they had no right arbitrarily to reject the evidence of Dr. Morris and Mrs. Peterson who were unimpeached and whose characters and qualifications were not questioned. Their testimony was undisputed and no suspicion of any kind was cast upon them. In respect to a similar condition it was said by the Supreme Court that:

"If the jury had the power to discredit any and every witness, and to disregard any and all facts, their verdicts could not be set aside by the judge, nor reviewed by

the appellate courts. Yet the law enjoins it upon the courts to set verdicts aside when contrary to the evidence or the law." Grand Fraternity v. Melton, 102 Tex. 399, 402, 117 S.W. 788, 789.

If the physical facts were such as to bring into question the accuracy of the testimony of Dr. Morris and Mrs. Peterson, we would not feel warranted in holding that their testimony should prevail; but in cases like this, where the physical facts as detailed by them are not questioned and no suspicion is cast upon them or their testimony, we cannot acquiesce in a suggestion that speculative statements of experts, based upon theory, may overcome it. Joffre v. Mynatt, Tex.Civ.App., 206 S.W. 951; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Texas Pac. Fidelity & Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050; Cincinnati, N. O. & T. P. Ry. Co. v. Webber, 178 Ky. 171, 198 S.W. 756; Texas State Mut. Fire Ins. Co. v. Farmer, Tex.Civ.App., 83 S.W.2d 411, and cases there cited.

We have given this record more than ordinary consideration, having read the entire statement of facts of nearly six hundred pages, and we are unable to escape the conclusion that it was the duty of the trial court to instruct the jury to return a verdict for the defendant. The case seems to have been fully developed and the record furnishes no basis for the belief that the evidence would, upon another trial, be different from what it was upon the trial from which this appeal is taken. Our conclusion is, therefore, that the judgment of the trial court should be reversed and judgment here rendered for the appellant; and it is so ordered.