**JONES v. TRADERS & GENERAL INS. CO.**

No. 14111.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 27, 1940.

Rehearing Denied Nov. 8, 1940.

Houtchens & Houtchens and J. Harold Craik, all of Fort Worth, and Lindsley M. Brown, of Arlington, for appellant.

Lightfoot, Robertson & Gano, of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

This suit was instituted by Lucille Jones, surviving wife of Tom P. Jones, deceased, in behalf of herself, individually, and as next friend of Tom P. Jones, Jr., minor son of the deceased, against the Traders & General Insurance Company, for compensation under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., for the death of the said Tom P. Jones, Sr.; and this appeal is prosecuted from the judgment of the trial court sustaining a general demurrer to plaintiff's petition and dismissing the suit.

The general demurrer sustained was addressed to plaintiff's second amended original petition. In plaintiff's first amended original petition, claims for other compensation alleged to have accrued in behalf of Tom P. Jones, Sr., before his death were included, to which pleas in abatement were addressed, but those claims were abandoned in plaintiff's second amended original petition, thus confining the suit to a claim for compensation by the surviving wife and minor child, for the death of Tom P. Jones, Sr., and this is the only claim involved in this appeal, and the only one hereinafter referred to in this opinion.

It is a familiar rule of court that the general demurrer admits the truth of all material allegations contained in the pleading on which relief is sought.

According to allegations in the petition, the claim for compensation sought was presented to and rejected by the Industrial Accident Board, and thereafter plaintiff complied with all the legal requirements necessary to confer jurisdiction on the district court to determine the controversy.

The facts on which the claim for compensation was based may be briefly summarized as follows:

"That plaintiff, Lucille Jones, is the surviving wife, and Tom P. Jones, Jr. is the surviving son of Tom P. Jones, deceased, and said plaintiffs are the sole defendants (dependents) and beneficiaries of the said Tom P. Jones, as defined by the Compensation Act of the State of Texas; and only person or persons entitled to recover herein; and the said Tom P. Jones, Jr. is a minor, now 13 years of age; that at the time of the death of the said Tom P. Jones, he and the plaintiff, Lucille Jones, were lawfully married to each other, and were living together as husband and wife on the date of his decease; that no children were born to said marriage; that the said Tom P. Jones, Jr. is the son of plaintiff by a former marriage; that plaintiffs are the sole surviving heirs at law of the said Tom P. Jones; that the said deceased died intestate, and no administration has ever been had upon his estate and none is necessary, for the reason that his estate owes no debts which are now unpaid.

"That the said Tom P. Jones is dead; that he died in Tarrant County, Texas, on November 14th, 1938, as a result of in-

juries sustained by him on May 4th, 1938; that upon the date of his injuries aforesaid, at about 3:00 o'clock P. M. on said day, while Tom P. Jones was in the employment of and in the regular discharge of his duties and course of his employment with and for E. L. Jones (sometimes known and referred to as E. L. Jones Construction Company), and while working in water in Eagle Mountain Lake, upon or immediately adjoining the W. W. Lechner property, situated about twelve miles northwest of the City of Fort Worth, in Tarrant County, Texas, the said Tom P. Jones sustained injuries resulting in his disability and death, as more fully hereinafter set out.

"That E. L. Jones was engaged in the work of an industrial concern at all times mentioned herein, and that at all such times he was susceptible to carry and did carry a policy of compensation insurance with Traders & General Insurance Company, covering and insuring the employees of the said E. L. Jones against losses growing out of incapacity to work by reason of damages and harm done to the physical structure of the body, and such diseases and/or infection as resulted therefrom, and that said defendant, Traders & General Insurance Company, wrote, made, executed and delivered to the said E. L. Jones a policy of compensation insurance, covering the employees of the said E. L. Jones, of which Tom P. Jones was one on the day and date of the injuries to said Tom P. Jones, aforesaid, and for a long time prior thereto, which said policy of compensation insurance was in full force and effect at all times mentioned herein, and that defendant herein has the original or a duplicate copy of said policy of compensation insurance, knows and is cognizant and is fully apprised of all the contents and provisions thereof, and is hereby notified to produce the same in court, to be used in evidence upon a trial of this cause, or upon its failure to do so, secondary evidence will be used to establish the existence and contents thereof, and that plaintiffs herein have never had access to said policy of compensation insurance, and do not know its technical provisions and/or contents, and cannot more fully in detail set forth the technical provisions thereof, but they say that the same, as they verily believe, is in the form prescribed by the Workmen's Compensation Laws and Employers Liability Act of this State for policies of compensation insurance. * * *

"That the injuries so inflicted upon the said Tom P. Jones, at the time and place above set forth, were sustained by him to his left foot while the deceased was working and wading about in the water of the aforesaid lake, and came about when he stepped with his said left foot upon some hard object, either a very sharp rock or sharp stick or a stump which pierced his shoe and penetrated the ball of his foot, as a result of which a painful and serious infection immediately set up, and rapidly spread throughout his entire left foot and entire body; that as a result of said injury and infection, he was compelled to obtain medical attention and to undergo five successive surgical operations to his said foot, in an effort to prevent the amputation or loss of use thereof, which operations extended over a period of several weeks. That during the course of such medical treatment and continuously up until the day of his death, the said Tom P. Jones suffered continuous, intense and excruciating pain in his left foot, which extended throughout his left leg; that said infection spread from his left foot and throughout his left leg, and up into his body generally, causing him to suffer intense pain, uneasiness and discomfort throughout his entire left leg and throughout his body generally; that by reason of the continuous pain and discomfort aforesaid, and the infections which spread throughout his entire body, he became exceedingly nervous, suffered with neurasthenia and became, as a result of such injuries, a neurastheniac, and his mind became afflicted to the extent that the said Tom P. Jones became delirious and permanently insane, and on the 11th day of November, 1938, while the said Tom P. Jones was mentally deranged and in a delirious frenzy and insane condition, brought about by the pain of his injuries and the infections resulting therefrom, he drank a mixture of concentrated lye and cleaning fluid, and subsequently died on the 14th day day of November, 1938, at approximately 1:15 P. M. of said date; that the death of the said Tom P. Jones was not intentionally self-inflicted, but resulted while the said decedent was possessed of an uncontrollable insane impulse, delirium and frenzy resulting from his injury, disability and infections aforesaid, at a time when the said Tom P. Jones had no rational knowledge of the consequences of his act, or conscious volition to produce his death; that such suicide was not the result of a voluntary and/or wilful choice, determined by a moderately intelligent mental power with knowledge of the

purpose.and effect of his act, but the said Tom P. Jones upon said occasion was dominated by a disordered, insane mind, and while so insane and delirious, brought about by the injury, infections and the intense, excruciating pain and suffering resulting therefrom, as aforesaid; that by reason of the matters and facts hereinabove alleged, the injuries sustained by the said Tom P. Jones on the 4th day of May, 1938, accompanied by the diseases and infections resulting therefrom, as herein elsewhere plead, was the sole producing cause of his death on the 14th day of November, 1938."

Then follow claims for compensation for the death of Tom P. Jones, Sr., fixed by the provisions of the Workmen's Compensation Act, computed under alternative allegations of fact, and for a lump sum settlement, which are not necessary to be specifically noticed, in view of the action of the trial court in holding that the allegations in plaintiff's petition were insufficient to show liability of the defendant in any sum.

Article 8309, Section 1, reads in part as follows:

"The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

\*       \*       \*       \*       \*

"4. An injury caused by the employé's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

In 45 Tex.Jur., page 475, section 82, this is said:

"Compensable disability or death must have for its foundation 'injury' (section 8, article 8306) of the nature of 'damage or harm to the physical structure of the body,' and of origin in causative danger in the employment. In order for the employee or beneficiary to recover, however, it is not necessary to show that the injury complained of was the proximate cause of incapacity or death, in the sense that the term

'proximate cause' is used in ordinary cases of negligence. All that need be shown is that the injury was a producing cause. The controlling issue is the continuity of the chain of causation between the alleged injury and the incapacity or death for which compensation is sought."

That announcement has ample support in the decisions cited in the notes.

In Texas Employers' Ins. Ass'n v. Burnett, 105 S.W.2d 200, 201, the following announcement was made in the opinion of the Commission of Appeals:

" 'In connection with the issue quoted above, the court gave the following charge: "In this connection you are instructed that the 'producing cause' is such as naturally resulted in the death of said J. W. Burnett." As the judgment of the lower court must be reversed for reasons hereinafter discussed, we do not discuss appellant's exceptions to this charge, but suggest that on another trial the court define "producing cause," as that term is used in the purview of our Workmen's Compensation Act, as that cause which, in a natural and continuous sequence, produces the death (or disability) in issue, and without which the death (or disability) would not have occurred.'

"So we have clearly presented the following question: Do the beneficiaries of a deceased employee have a right to recover compensation for death of the employee when the death is due directly to an independent intervening agency, having no connection with or relation to the original injury, although the injury may have to some extent reduced the power of resistance of the deceased, and in that manner contributed in some degree to his death?

"We think the question is answered by our statute. Compensation for either disability or death must have for its foundation an 'injury' received by an employee in the course of employment. Our compensation law has defined 'injury' in this language: 'The terms "injury" or "personal injury" shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.' (Rev.St.1925, art. 8309, § 1.)

"It is thus seen that diseases which naturally result from an injury are themselves classed as an injury, and if an employee be incapacitated thereby, or if he

die therefrom, compensation is allowed. On the other hand, it was held in the case of Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S.W. 116, that death by typhoid fever contracted by an employee as the result of impure water or food furnished by an employer is not compensable. It is pointed out, as was done in the case of Texas Employers' Insurance Association v. Jackson (Tex.Com.App.) 265 S.W. 1027, that a disease which does not ensue by reason of an injury inflicted upon the body, that is, by 'damage or harm to the physical structure of the body,' is not compensable. It follows, therefore, that death by disease not naturally caused by the injury, but intervening as an independent agency, is not compensable. To be compensable, the death must result from the physical injury or from disease or infection which naturally results from the injury. If there be no such disease or infection, as in the present instance, there can be no compensable death; unless the physical injury itself be the cause of the death.

"Our statute in one or more instances uses in substance the expression 'if death results from the injury,' and in section 16 of article 8306 provides, 'in all cases of injury resulting in death, where such injury was sustained in the course of employment, cause of action shall survive.' It is thus seen that the statute specifically provides that the death must be the result of the injury itself; or conversely, the injury must be the primary, active, and efficient cause of the death."

In accordance with the well settled rule that every reasonable intendment from the facts pleaded will be indulged in support of the plaintiff's petition as against a general demurrer, we believe it reasonably appears that the mixture of concentrated lye and cleaning fluid, which Tom P. Jones drank, was poisonous and that he died from the effects thereof three days after drinking it.

As pointed out in appellant's brief, this case is of first impression in this State, but they have cited decisions from other States, seemingly in point.

The following excerpts from 71 Corpus Juris, under the title Workmen's Compensation Acts, summarize the holding of other States, including Pennsylvania, Massachusetts, Vermont and others:

Section 392, page 638: "Provided the insanity results from a compensable accident and not from a brooding over the injury or other causes, the suicide of an employee while insane may entitle his dependents to compensation therefor; thus, where there follows as a direct result of the accident an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death, there is a direct and unbroken causal connection between the physical injury and death; however, where the suicide is the result of voluntary and willful choice determined by a moderately intelligent mental power with knowledge of the purpose and effect of the act, even though dominated by a disordered mind, a new and independent agency breaks the chain of causation."

Section 484, page 770: "Workmen's compensation statutes generally preclude compensation when the injury is self-inflicted or due to a willful intent on the part of the employee to injure himself. Within the concept of such a statute the injury must be intentionally self-inflicted, and compensation is not barred because the employee was negligent, or guilty of an error in judgment or of a heedless and inadvertent act. Where the employee kills himself while in a delirium or frenzy caused by the pain of his injury, his death is not 'intentionally self-inflicted' so as to bar his dependents from recovery."

In Words & Phrases, Permanent Edition, volume 45, beginning on page 186, there are many definitions of the terms "willful" and "willfully", both in civil and criminal law. We quote a few only:

" 'Willfully' means deliberately and intentionally, and with design and purpose. State v. Smith, 159 Minn. 511, 199 N.W. 427, 429; Gatewood v. Commonwealth, 215 Ky. 360, 285 S.W. 193."

As defined in Bouvier's Law Dictionary, the word "willful" means "intentional".

It is reasonably inferable from allegations in plaintiff's petition that the act of the deceased in drinking the poisonous solution was done by him designedly, but that by reason of the disturbed condition of his mind, resulting from the pain he was suffering from his injury and the infection therefrom, he was incapable of appreciating the consequences of the act, which therefore was not willful and intentional, within the legal concept of those terms.

But in view of another trial, we will add that the converse of that contention is well

established by the authorities. Thus, in 24 Tex.Jur. section 2, page 372, this is said: "The test for determining the responsibility of the individual for his acts—whether responsibility be challenged on the score of mental unfitness, 'incapacity,' 'incompetency,' 'intoxication,' 'undue influence,' or what not—is that which is embodied in the issue as to whether he understood or was able to understand or appreciate the consequences of the particular act or transaction. Thus it has been said that if one has the ability to transact ordinary affairs of life, to understand their nature and effect, and to exercise his will in relation to them, he is not deemed of unsound mind in the sense of the law."

Also, in section 5, page 377, of the same volume, this announcement is found: " 'The general definition of the term "mental capacity" seems to contemplate the ability to understand the nature and effect of the act in which a person is engaged and the business he is transacting.' "

And the following in 12 Tex.Jur. section 55, page 292: "Mere weakness of mind will not excuse a person from the consequences of his criminal acts if he is able to distinguish between right and wrong. The law does not require, as the condition on which criminal responsibility shall follow the commission of crime, the possession of one's faculties in full vigor, or a mind unimpaired by disease or infirmity; a person may be criminally responsible though his mind is so weakened or impaired."

We believe that rule of decisions in other States announced in the above quotations from 71 Corpus Juris is sound and is applicable and controlling here. Applying the same as a test to plaintiff's petition, we conclude that the allegations therein, when taken as true, show a right of recovery of the compensation sought. They negative the exception to the general rule giving a right of recovery, viz., "When the suicide is the result of voluntary and willful choice determined by a moderately intelligent mental power with knowledge of the purpose and effect of the act, even though dominated by a disordered mind, a new and independent agency breaks the chain of causation."

And we may add that if the suicide was a new and independent agency that brought about the death of Tom P. Jones, and that the drinking of the poison was done with a willful intent to injure himself, then a recovery therefor would be prohibited by the provisions of 2nd sub. 4 of sect. 1 of Art. 8309, quoted above.

In 40 Words & Phrases, Permanent Edition, page 625, is the following statement: "To constitute suicide at common law, the person must be of the years of discretion and of sound mind. Weber v. Supreme Tent of Knights of Maccabees of the World, 172 N.Y. 490, 65 N.E. 258, 92 Am. St.Rep. 753."

Appellee invokes that meaning to the designation in one portion of plaintiff's petition of the act of Jones in drinking poison as suicide; but it definitely appears that the same was used merely as a convenient designation of preceding allegations to the effect that the act of taking the poison was not the act of a person of sound mind.

Appellee has cited such cases as Texas Pac. Fidelity & Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050; Houston & T. C. Ry. Co. v. Harris, 103 Tex. 422, 128 S.W. 897; Traders & Gen. Ins. Co. v. Keahey, Tex.Civ.App., 119 S.W.2d 618, writ dismissed; Byerly v. Consolidated Light, Power & Ice Co., 130 Mo.App. 593, 109 S.W. 1065; announcing the rule that when the evidence adduced leaves the cause of the injury made the basis of the suit in doubt, and the same may reasonably be construed as favorably to the defendant as to plaintiff, then plaintiff has not discharged the burden of proof on that issue. That rule of decisions is invoked as applicable to plaintiff's burden to allege and prove a causal connection between the injury to the foot of the deceased and infections resulting therefrom, and his death. But in view of the specific allegations in plaintiff's petition on that issue, we believe those authorities cannot be given controlling effect here. Nor do we believe that those allegations are mere conclusions rather than allegations of fact within the purview of the decision in De Grazier v. Panell Oil Corporation, Tex.Civ.App., 109 S.W.2d 1109, writ dismissed.

For the reasons indicated, the judgment of the trial court sustaining defendant's general demurrer to plaintiff's second amended original petition and dismissing the suit is reversed and the cause is remanded for further proceedings not inconsistent with our foregoing conclusions.

### On Motion for Rehearing.

The judgment from which this appeal is prosecuted recites that defendant's pleas in abatement Nos. 1, 2, 3, 4 and 5, and also the general demurrer to plaintiff's second amended petition, on which plaintiff went to trial, were sustained and the suit dismissed, with no recital as to whether the dismissal was by reason of the order sustaining the pleas in abatement or the sustaining of the general demurrer.

In appellee's briefs on original hearing, in answer to appellant's assignments of error, by counter assignments and propositions thereunder, the contention was presented that in the absence of a statement of facts the findings of the court on the pleas in abatement, after evidence heard, cannot be disturbed; and since appellant has not assigned error to the action of the court in sustaining those pleas in abatement, but has complained only of the overruling of the general demurrer, her appeal should be dismissed or the judgment affirmed. In other words, that plaintiff's suit having been abated, the further order sustaining the general demurrer should be treated as surplusage.

That contention is again stressed in appellee's motion for rehearing.

 All those pleas in abatement were addressed to plaintiff's first amended petition, but were omitted from the second amended petition, on which trial was had; and all were therefore abandoned except the first. That first plea was a general demurrer to the first count in plaintiff's petition, and without further pleading it was applicable to the same count in the second amended petition, on which alone plaintiff sought relief. 33 Tex.Jur. par. 84, page 515. And that, too, notwithstanding it was essentially a plea in bar and did not include the necessary elements of a plea in abatement of the first count, as defined in 1 Tex.Jur. pages 21 to 24, inclusive, and decisions there cited.

In the second, third and fourth counts in the first amended petition, recovery was sought for compensation which accrued to Tom P. Jones between the date of his injury and his death, the amount of compensation being predicated on different theories, such as the loss of left foot in one count, and of entire leg in another, etc. Those counts were alleged in the alternative, and compensation sought in each count was predicated solely upon the possible inability of plaintiff to recover on the next immediately preceding count. As said before, all those counts except count No. 1 were abandoned because omitted from the second amended petition. Hence, the action of the trial court in sustaining the second, third, fourth and fifth pleas in abatement addressed thereto was void for lack of pleading as a basis therefor, as is apparent from the face of the record. And being fundamental error, it must be considered, in the absence of an assignment of error. 3 Tex.Jur. par. 571, page 808.

But the court had jurisdiction of the general demurrer to plaintiff's second amended petition, and to dismiss the suit after sustaining it, in the absence of any offer of amendment by plaintiff after the demurrer was sustained. We conclude, therefore, that plaintiff had the right of appeal from that ruling, to the exclusion of the rulings on the so-called pleas in abatement Nos. 2 to 5, inclusive, of which the court had no jurisdiction. 3 Tex.Jur. par. 719, page 1008, and decisions there noted.

Accordingly, appellee's motion for rehearing is in all things overruled.